*341 STEELMAN, Judge.
*360 When a law enforcement officer took defendant's driver's license to the officer's patrol vehicle to conduct computer research into the status of defendant's driver's license, this amounted to a seizure under the Fourth Amendment to the U.S. Constitution. In Rodriguez v. United States, ---U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), the United States Supreme Court rejected the argument that an otherwise unconstitutional seizure may be justified simply by characterizing it as a brief or "de minimus " violation of a defendant's rights under the Fourth Amendment.
I. Factual and Procedural History
At 11:30 p.m. on 30 April 2012, Lilesville Police Chief Bobby Gallimore was on patrol. He noticed a parked car in a gravel area near Highway 74, and stopped to see if the driver needed assistance. Before approaching the car, Chief Gallimore ran the vehicle's license plate through his computer and was advised that the car was owned by Keith Leak (defendant). Chief Gallimore spoke with defendant, who told him that he did not need assistance, and had pulled off the road to return a text message. Chief Gallimore then asked to see defendant's driver's license, and determined that the name on the license-Keith Leak-matched the information he had obtained concerning the car's license plate.
After examining defendant's driver's license, Chief Gallimore took it to his patrol vehicle to investigate the status of defendant's driver's license. It was undisputed that Chief Gallimore had no suspicion that defendant was involved in criminal activity. Defendant remained in his car while Chief Gallimore ran a check on his license and confirmed that his license was valid. However, the computer search revealed that there was an outstanding 2007 warrant for defendant's arrest. Chief Gallimore asked defendant to step out of his car, at which point, defendant informed Chief Gallimore that he "had a .22 pistol in his pocket." Defendant was arrested for possession of a firearm by a convicted felon; the record does not indicate whether defendant was ever prosecuted for the offense alleged in the 2007 arrest warrant.
On 4 June 2012 defendant was indicted for possession of a firearm by a felon and for the related misdemeanor of carrying a concealed weapon. On 5 August 2013 defendant filed a motion to suppress evidence obtained at the time of his arrest, on the grounds that the evidence had been "seized in or as a result of" a seizure in "violation of his rights under the Fourth Amendment of the U.S. Constitution and similar provisions in the North Carolina Constitution[.]" The motion to suppress was heard by Judge Tanya Wallace on 5 August 2013. Chief Gallimore testified for *361 the State at the suppression hearing. Defendant did not present evidence. On 7 August 2013 Judge Wallace entered an order denying defendant's motion. On 14 November 2013 defendant entered a plea of guilty to possession of a firearm by a felon pursuant to a plea agreement, reserving his right to appeal the denial of his suppression motion. The trial court determined defendant's prior record level to be II, imposed a suspended sentence of nine to twenty months imprisonment, and placed defendant on supervised probation for twelve months.
Defendant appeals.
II. Denial of Suppression Motion
The sole issue raised on appeal is whether Judge Wallace erred by denying defendant's motion to suppress evidence. Defendant argues that he was effectively seized when Chief Gallimore took his driver's license to the patrol vehicle in order to conduct a computer search and that, because Chief Gallimore had no suspicion that defendant was engaged in criminal activity, the seizure violated his rights under the Fourth Amendment to the United States Constitution. We are compelled to agree.
A. Standard of Review
"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are *342 subject to full review." State v. Biber, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citing State v. Brooks, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994), and State v. Baker, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (other citations omitted)). " 'Under a de novo review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting In re Greens of Pine Glen, Ltd. P'ship, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) ).
The issue in this case is whether there was a violation of defendant's rights under the Fourth Amendment to the U.S. Constitution.
In analyzing federal constitutional questions, we look to decisions of the United States Supreme Court. We also look for guidance to the decisions of the North Carolina Supreme Court construing federal constitutional and State *362 constitutional provisions, and we are bound by those interpretations. We are also bound by prior decisions of this Court construing those provisions, which are not inconsistent with the holdings of the United States Supreme Court and the North Carolina Supreme Court.
Johnston v. State, 224 N.C.App. 282, 288, 735 S.E.2d 859, 865 (2012) (citing State v. Elliott, 360 N.C. 400, 421, 628 S.E.2d 735, 749, (2006), and In re Civil Penalty, 324 N.C. 373, 379 S.E.2d 30 (1989) ), affd, 367 N.C. 164, 749 S.E.2d 278 (2013).
B. Discussion
The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV.
The fourth amendment protects individuals against unreasonable searches and seizures. Not every police encounter, however, warrants fourth amendment scrutiny. Under Terry v. Ohio and its progeny, a three-tiered standard has developed by which to measure the need to investigate possible criminal activity against the intrusion on individual freedom which the investigation may entail:
(1) Communication between police and citizens involving no coercion or detention are outside the scope of the fourth amendment.
(2) Seizures must be based on reasonable suspicion.
(3) Arrests must be based on probable cause.
State v. Harrell, 67 N.C.App. 57, 60-61, 312 S.E.2d 230, 234 (1984) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (other citation omitted)).
Chief Gallimore's initial contact with defendant was consensual, as indicated in several of the trial court's findings of fact:
...
(4) Initially Chief Gallimore was concerned about the safety of the vehicle's occupant or occupants, whether the vehicle had broken down or whether the occupants needed other assistance.
*363 (5) The only occupant of the vehicle was the Defendant Keith Leak. Mr. Leak assured the officer he did not need assistance, but told Chief Gallimore that he pulled over to text, since he knew he could not text while driving.
(6) When approaching the vehicle, the officer had run the tag on the vehicle, discovering the vehicle to be registered to Keith Leak....
(7) The Chief approached, in uniform, and does not recall whether or not his blue lights were on. He had a service revolver, but it was not displayed. The officer requested the driver's license and registration from Mr. Leak, which were produced. The officer confirmed that Keith Leak was the name on the driver's license.
" 'Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.' "
*343 State v. Campbell, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005) (quoting Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389, 398 (1991) (internal quotation omitted)). Chief Gallimore required no particular justification to approach defendant and ask whether he required assistance, or to ask defendant to voluntarily consent to allowing Chief Gallimore to examine his driver's license and registration.
In its order denying defendant's suppression motion, the court stated two alternative conclusions of law "[t]hat any seizure that occurred was deminimus. [sic] But the court finds that there was no seizure in this instance, based on the facts and circumstances surrounding this encounter." Defendant argues that Chief Gallimore's conduct in taking defendant's driver's license back to his patrol car in order to investigate the status of defendant's license constituted a seizure that was not justified in the absence of reasonable suspicion of criminal activity. We agree and hold that, under binding precedent of this Court, defendant was seized when Chief Gallimore took his license and registration back to the patrol car for investigation.
An individual is seized by a police officer and is thus within the protection of the Fourth Amendment when the officer's conduct "would have communicated to a reasonable *364 person that he was not at liberty to ignore the police presence and go about his business." ... Moreover, "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" or otherwise terminate the encounter.
State v. Icard, 363 N.C. 303, 308-09, 677 S.E.2d 822, 826-27 (2009) (quoting Bostick, 501 U.S. at 437, 111 S.Ct. at 2387-88, 115 L.Ed.2d at 400 (1991) (internal quotation omitted), and INS v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247, 255 (1984) (internal quotation omitted)).
Chief Gallimore testified that he did not consider defendant to be free to leave when he took his driver's license back to his patrol car:
PROSECUTOR: And when you asked him for his driver's license and registration, why did you do that?
CHIEF GALLIMORE: I asked for his driver's license to-I asked him if he had a valid license, and he said he did. And I said, "Well, may I see your license?" And he handed me his license. And then that's when I ran them to make sure that they were valid.
...
Q And why is that?
A Because we seem to have a lot of people that drive while license revoked. And I felt obligated-If I would have released-you know, if I told him he's free to leave from there and he's okay to drive from there, and he got in a wreck, then I'd be liable for it because he didn't have a license. (emphasis added).
In State v. Jackson, 199 N.C.App. 236, 681 S.E.2d 492 (2009), a prior panel of this Court held that a reasonable person would not feel free to drive away while a law enforcement officer retains possession of his driver's license. In Jackson a car was stopped based upon the officer's belief that the driver did not have a valid driver's license. After dispelling this suspicion, the officer continued to question the driver and his passenger (the defendant) about whether there were drugs or weapons in the car. We held that this "interrogation was indeed an extension of the detention beyond the scope of the original traffic stop as *365 the interrogation was not necessary to confirm or dispel [the officer's] suspicion that [the driver] was operating [a motor vehicle] without a valid driver's license[.] ... Accordingly, for this extended detention to have been constitutional, [the officer] must have had grounds which provided a reasonable and articulable suspicion or the encounter must have become consensual." Jackson, 199 N.C.App. at 242, 681 S.E.2d at 496-97 (citation omitted). After holding that the detention was not justified by reasonable suspicion of criminal activity, we held that it constituted an unconstitutional seizure:
*344 Furthermore, there is no evidence that the encounter became consensual after [the officer's] suspicion that [the driver] was operating without a license was dispelled. Generally, an initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's license and registration. ... [The officer] took [the driver's] driver's license to her patrol car and ... [another officer] brought the vehicle registration card to the patrol car. However, there is no evidence in the record that [the driver's] documentation was ever returned. As a reasonable person under the circumstances would certainly not believe he was free to leave without his driver's license and registration, [the officer's] continued detention and questioning of [the driver] after determining that [he] had a valid driver's license was not a consensual encounter. Accordingly, the extended detention of Defendant was unconstitutional[.]
Jackson at 243, 681 S.E.2d at 497 (citing State v. Kincaid, 147 N.C.App. 94, 100, 555 S.E.2d 294, 299 (2001) ) (other citation omitted) (emphasis added). On the basis of Chief Gallimore's testimony, the holding of Jackson, and our analysis of the totality of the circumstances, we hold that a seizure occurred when Chief Gallimore took defendant's license back to his patrol car. The trial court erred in ruling that defendant was not seized.
Our conclusion is neither novel nor unusual. See, e.g., United States v. Jones, 701 F.3d 1300, 1315 (10th Cir.2012) ("the government acknowledges that Mr. Jones was seized once the officers took Mr. Jones's license and proceeded to conduct a records check based upon it") (citing United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir.1995) ); United States v. Farrior, 535 F.3d 210, 219 (4th Cir.2008) ("The fact that Officer Morris had returned Farrior's license and registration *366 also strongly indicates that the encounter was consensual and that no seizure occurred within the meaning of the Fourth Amendment."); and Liberal v. Estrada, 632 F.3d 1064, 1083 (9th Cir.2011) (noting that the case before it was "like [United States v. ] Chan-Jimenez, 125 F.3d [1324,] 1326 [ (9th Cir.1997) ] in which we held that the motorist had been seized because the police officer had retained possession of his driver's license and vehicle's registration").
The trial court's alternative conclusion of law that "any seizure that occurred was [de minimus ] was also contrary to law and was error." In the recent United States Supreme Court case, Rodriguez v. United States, ---U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015),[1] the United States Supreme Court held that continued detention of a motorist beyond the scope of the initial reason for the stop was unconstitutional unless justified by reasonable suspicion. In Rodriguez, a law enforcement officer stopped a motorist to issue a citation for swerving off the highway. After issuing the driver a warning ticket, the officer detained the driver until the arrival of a drug-sniffing dog. The 8th Circuit Court of Appeals held that the "resulting seven- or eight-minute delay ... constituted a de minimus intrusion on Rodriguez's personal liberty[.]" United States v. Rodriguez, 741 F.3d 905, 907-08 (8th Cir.2014). The Supreme Court "granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff" and held that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are-or reasonably should have been-completed." Rodriguez, --- U.S. ----, 135 S.Ct. at 1614, 191 L.Ed.2d at 495. The Court vacated the judgment of the Eighth Circuit Court of Appeals and remanded for determination of "whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation[.]" Rodriguez, at ----, 135 S.Ct. at 1616-17, 191 L.Ed.2d at 496, rejecting the de minimus analysis of the 8th Circuit.
*345 In this case, there is no factual dispute that Chief Gallimore did not have a reasonable suspicion that defendant was engaged in criminal activity. "An officer has reasonable suspicion if a 'reasonable, cautious officer, guided by his experience and training,' would believe that criminal activity is afoot 'based on specific and articulable facts, as well as *367 the rational inferences from those facts.' " State v. Williams, 366 N.C. 110, 116, 726 S.E.2d 161, 167 (2012) (quoting State v. Watkins, 337 N.C. 437, 441-42, 446 S.E.2d 67, 70 (1994), and citing Terry ). Chief Gallimore described his interaction with defendant as "a routine conversation" and testified that his reason for approaching defendant was to ascertain if he needed assistance with a disabled vehicle. Defendant was not parked illegally, and Chief Gallimore did not smell alcohol or discern any other indicia of criminal activity. The trial court found as a fact that " [b]etween the time of the initial speaking with the Defendant and the time that the first hit on the Defendant's name alerted [Chief Gallimore to the outstanding arrest warrant] there was no actual suspicion of criminal activity." We hold that defendant was seized in violation of his rights under the Fourth Amendment to the United States Constitution.
"Evidence that is discovered as a direct result of an illegal search or seizure is generally excluded at trial as fruit of the poisonous tree unless it would have been discovered regardless of the unconstitutional search." Jackson at 244, 681 S.E.2d at 497 (citing Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441, 455 (1963) ). In this case, Chief Gallimore's seizure of defendant for purposes of conducting an investigation into his driver's license led to his arrest and the discovery of the firearm in his possession. There was no evidence that defendant's pistol was or could have been discovered "by means sufficiently distinguishable to be purged of the primary taint" of the unlawful seizure. Wong Sun, 371 U.S. at 487-88, 83 S.Ct. at 417, 9 L.Ed.2d at 455. We reverse and remand to the trial court for entry of an order vacating defendant's guilty plea.
REVERSED AND VACATED.
Judge CALABRIA concurs.
Judge McCULLOUGH dissents in a separate opinion.
McCULLOUGH, Judge, dissents.
From the majority opinion's conclusion that an officer conducts an impermissible seizure under the rationale of Rodriguez v. United States, 575 U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), when that officer conducts a computer search of the driver's license of an individual that the officer approached to determine if the driver needed assistance, I respectfully dissent.
In the case at bar, Lilesville Police Chief Gallimore was on patrol when he noticed a car parked in a gravel lot just off of Highway 74.
*368 Chief Gallimore approached the car to determine if the driver needed assistance. Before approaching the car the officer checked the vehicle's license plate and determined that the car was owned by the defendant, Keith Leak. Upon approaching the car, Chief Gallimore requested the driver's identification. The driver provided the Chief with his driver's license which identified him as the registered owner, Keith Leak.
The defendant advised Chief Gallimore that he was texting and thus did not need any assistance. Under the majority's reading of Rodriguez, any further investigative activity is prohibited as an impermissible seizure and violates the Fourth Amendment. I do not read Rodriguez so narrowly.
In this case, once defendant provided Chief Gallimore with his driver's license, the officer returned to his patrol car, checked to see if Mr. Leak had any outstanding warrants or was carrying insurance as required by law. The computer check showed the license was valid but there was an outstanding 2007 warrant and defendant was asked to exit the vehicle whereupon defendant informed Chief Gallimore that he had a loaded pistol in his pants pocket. Based on his status as a convicted felon defendant was eventually indicted on that charge.
I recognize that Rodriguez involved a traffic stop where there was an actual traffic violation committed in the officer's presence *346 while the encounter in this case began as an inquiry to see if the motorist needed assistance. The reality of traffic enforcement shows officers encounter many different circumstances along our highways. They may encounter abandoned vehicles, vandalized vehicles, occupied vehicles where the driver is ill or incapacitated, vehicles where the driver needs assistance due to a mechanical failure, or recently crashed vehicles. In this case, no one disputes the fact that Chief Gallimore approached defendant's vehicle to see if assistance was required. Instead of holding that an officer may not conduct any investigation of a driver when the purpose of the approach is non-criminal such as here where the motive was to offer assistance, I would hold that regardless of why an officer approaches a vehicle (assuming it is for a legitimate reason), that the officer can perform the routine functions we associate with a traffic stop for a traffic violation. The majority would leave police officer's having two standards for investigative activity, one when a violation occurs, another when the approach to a vehicle is to see if assistance is needed. I do not believe that is what Rodriguez requires.
Specifically, the majority opinion states "Defendant argues that Chief Gallimore's conduct in taking defendant's license constituted a *369 seizure that was not justified in the absence of reasonable suspicion of criminal activity. We agree and hold ... defendant was seized when Chief Gallimore took his license and registration back to the patrol car for investigation." I would hold that so long as an officer's approach to a vehicle is for a valid purpose, including the possibility of rendering assistance, he is able to take the same routine steps that he would be allowed to do if he had observed an actual traffic violation. In fact, the colloquy between the prosecutor and Chief Gallimore quoted in the majority opinion articulates why such action is reasonable. The majority does not dispute that an officer has the right to ask the operator of a vehicle to identify himself. Once the driver is so identified, Chief Gallimore did not actually need the physical license to run defendant's name, he undoubtedly could have done that without the license in front of him, although it is certainly an easier task to perform if one has the license nearby. Thus I believe that the act of checking a driver's license is permissible, so long as the approach to the vehicle is for a valid purpose such as offering assistance. The majority concedes an officer can ask the driver to identify himself. I maintain an officer has the right to ask the driver to identify himself to ensure that the driver is the owner and the right to check that driver's record for insurance or warrants. In other words, I believe that in the area of traffic enforcement and management, the reduced expectations of privacy in the operation of vehicles, that the police in any such encounter do not run afoul of the Fourth Amendment when they take the actions Chief Gallimore took here.
I find support for this view in the Rodriguez opinion itself. In Rodriguez, Justice Ginsburg recognized that certain actions officers take during traffic stops are warranted on the basis of officer safety and that this doctrine provides an independent ground to make a driver's license check citing to United States v. Holt, 264 F.3d 1215, 1221-22 (10th Cir.2001). Rodriguez, 575 U.S. at ----, 135 S.Ct. at 1616. Justice Ginsburg then went on to recognize the actions an officer is authorized to take during a traffic stop where an officer is determining whether or not to issue a ticket, saying:
Beyond determining whether to issue a traffic ticket an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.
*370 Rodriguez, 575 U.S. at ----, 135 S.Ct. at 1615 (internal citations omitted) (alteration in original) (emphasis added).
I would merely hold that when the traffic encounter is for the purpose of rendering assistance the officer may still verify that the car is properly registered, that the operator is the registered owner or is using the vehicle *347 with permission and that the driver has a valid license and no outstanding warrants just as was done here. While Rodriguez was a traffic violation case, officers encounter motorists on the highways and byways in a variety of circumstances and I would hold that an officer who approaches a vehicle where the operator has parked his car in such a way as to raise a question as to whether he needs aid has the same right to conduct the limited checks we associate with stops for traffic violations. Therefore I would uphold defendant's conviction and affirm the denial of the motion to suppress.

Rodriguez was decided after the suppression hearing in this case. "Because defendant had entered notice of appeal and his case was pending when [Rodriguez ] was issued, that decision applies to defendant's case." State v. Morgan, 359 N.C. 131, 154, 604 S.E.2d 886, 900 (2004) (citing Griffith v. Kentucky, 479 U.S. 314, 322-23, 107 S.Ct. 708, 93 L.Ed.2d 649, 658 (1987) ).