BERGER, Judge.
 

 *500
 
 On March 16, 2017, a Bladen County jury convicted Ernest Raysean Gray ("Defendant") of first-degree murder and discharging a weapon into an occupied dwelling, and he was sentenced to life in prison without parole. Defendant asserts that the trial court erred when it denied his motion to dismiss both charges because the State had not introduced sufficient evidence to establish that he was the perpetrator of the crimes. We disagree.
 

 Factual and Procedural Background
 

 In October 2014, Malcolm Jerome Melvin ("Melvin") was living in a mobile home park in Elizabethtown, North Carolina, with his girlfriend, Danielle Purdie ("Purdie"). On October 28, 2014, around 1:15 a.m., Melvin saw a Facebook message from Defendant on Purdie's phone. Melvin responded to the message, both identifying himself and questioning why Defendant was messaging his girlfriend. Defendant responded with another message that said, "Wassup doh [expletive] y u inbox back doh ... I'm sayn wess up [expletive] wat up want beef now I'm down wit dat."
 

 After discussing the messages with Melvin, Purdie went back to sleep, but awoke to a knock at the door at about 2:30 a.m. Melvin retrieved his pistol from a closet and went to the front door. Purdie remained in the bedroom. From the bedroom, Purdie could hear voices, but she could not identify the individuals at the door. A person at the door said, "Wass up doh? Wass up? You want beef?" Purdie then heard a gunshot, saw Melvin fall to the floor, and heard more gunshots. Purdie ran to Melvin, but he was not breathing and had no pulse.
 

 Angela Locklear ("Locklear") and Stephen Johnson ("Johnson"), Defendant's uncle, lived in a mobile home that was located about 220 feet from Melvin's residence. On October 28, 2014, between 1:00 a.m. and 2:00 a.m., Locklear heard gunshots. Shortly thereafter, Defendant knocked on their door and asked to speak with his uncle. Locklear testified that Defendant "looked like somebody was after him or something ... he act[ed] like he was scared." Defendant told Johnson he did
 
 *501
 
 not know anything about the gunshots. Defendant then fell asleep in their home.
 

 Around 6:00 a.m. the following morning, Twasjay Brown ("Brown") knocked on Locklear and Johnson's door, looking for Defendant. Johnson asked Brown whether he or Defendant had anything to do with the events that occurred during the night. Brown denied any involvement. Defendant and Brown then left the residence.
 

 When deputies with the Bladen County Sheriff's Department began investigating Melvin's death on October 28, 2014, they found a wallet, with a driver's license and social security card belonging to Defendant, on the ground between Melvin's residence and Johnson's residence. A cell phone belonging to Brown was also found in the front yard of Melvin's residence, next to .45 caliber shell casings. Both .45 caliber and 9mm shell casings were recovered from the front yard of Melvin's residence. There were several bullet holes on the exterior of the residence near the front door, as well as several bullet holes inside of the entrance, where investigators recovered a .45 caliber bullet. Melvin's pistol was located inside his residence and had not been fired. Melvin's cause of death
 
 *367
 
 was determined to be a gunshot wound to the head. The weapon used to kill Melvin was never recovered.
 

 Defendant was indicted for first-degree murder and discharging a weapon into an occupied dwelling. At trial, Defendant moved to dismiss both charges at the close of the State's presentation of evidence, and the motion was renewed at the close of all the evidence. Both of Defendant's motions were denied. Defendant was found guilty of first-degree murder and discharging a weapon into an occupied dwelling, and sentenced to life imprisonment without parole. Defendant gave timely notice of appeal.
 

 Standard of Review
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation and quotation marks omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980).
 

 *502
 
 In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch
 
 ,
 
 351 N.C. at 378-79
 
 ,
 
 526 S.E.2d at 455
 
 (
 
 purgandum
 

 [1]
 
 ).
 

 Analysis
 

 In North Carolina, a death that is the result of a "felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree."
 
 N.C. Gen. Stat. § 14-17
 
 (a) (2017).
 

 The elements of felony murder are (1) that a defendant, or someone with whom the defendant was acting in concert, committed or attempted to commit a predicate felony under
 
 N.C. Gen. Stat. § 14-17
 
 (a) (2013) ; (2) that a killing occurred in the perpetration or attempted perpetration of that felony; and (3) that the killing was caused by the defendant or a co-felon.
 

 State v. Maldonado
 
 ,
 
 241 N.C. App. 370
 
 , 376,
 
 772 S.E.2d 479
 
 , 483-84 (
 
 purgandum
 
 ),
 
 appeal dismissed, disc. review denied
 
 ,
 
 368 N.C. 292
 
 ,
 
 776 S.E.2d 196
 
 (2015). Shooting into an occupied dwelling is a qualifying
 
 *503
 
 predicate felony for felony murder pursuant to Section 14-17(a).
 
 State v. Wall
 
 ,
 
 304 N.C. 609
 
 , 613,
 
 286 S.E.2d 68
 
 , 71 (1982).
 

 When evidence of whether the defendant was the perpetrator of the crime is circumstantial, "courts often [look to] proof of motive, opportunity, capability, and identity to determine whether a reasonable inference of the defendant's guilt may be inferred or whether there is merely a suspicion that the defendant is the perpetrator."
 

 *368
 

 State v. Hayden
 
 ,
 
 212 N.C. App. 482
 
 , 485,
 
 711 S.E.2d 492
 
 , 494 (2011) (citation and quotation marks omitted). "The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury."
 
 State v. Stone
 
 ,
 
 323 N.C. 447
 
 , 452,
 
 373 S.E.2d 430
 
 , 433 (1988).
 

 As this Court explained before in
 
 State v. Lowry
 
 :
 

 The real problem lies in applying the test to the individual facts of a case, particularly where the proof is circumstantial. One method courts use to assist analysis is to classify evidence of guilt into several rather broad categories. Although the language is by no means consistent, courts often speak in terms of proof of motive, opportunity, capability and identity, all of which are merely different ways to show that a particular person committed a particular crime. In most cases these factors are not essential elements of the crime, but instead are circumstances which are relevant to identify an accused as the perpetrator of a crime. ...
 

 While the cases do not generally indicate what weight is to be given evidence of these various factors, a few rough rules do appear. It is clear, for instance, that evidence of either motive or opportunity alone is insufficient to carry a case to the jury. On the other hand, when the question is whether evidence of both motive and opportunity will be sufficient to survive a motion to dismiss, the answer is much less clear. The answer appears to rest more upon the strength of the evidence of motive and opportunity, as well as other available evidence, rather than an easily quantifiable 'bright line' test.
 

 State v. Lowry
 
 ,
 
 198 N.C. App. 457
 
 , 466,
 
 679 S.E.2d 865
 
 , 870-71 (2009) (
 
 purgandum
 
 ).
 

 Here, the State introduced evidence tending to establish both motive and opportunity. First, motive tended to be sufficiently established with testimony concerning the hostility that existed between Defendant and
 
 *504
 
 Melvin over Defendant's communication with Purdie. Although Purdie did not see the individuals and was unable to identify their voices, the evidence tended to show that similar, distinctive language had been used both in the message sent by Defendant and by the person speaking with Melvin at the time he was shot. Both communications were about a perceived "beef" between Defendant and Melvin over Defendant's interactions with Purdie. The Facebook message, which could be affirmatively attributed to Defendant, along with the fact that a speaker using similar language came to Purdie's home to confront Melvin with a weapon, evidenced some hostility between Defendant and Melvin of the kind that would precipitate an intentional killing. This is sufficient for a reasonable juror to conclude Defendant had motive to kill Melvin.
 

 Second, Defendant's opportunity to commit the crimes tended to be sufficiently established by both physical evidence at the crime scene and testimony of those who interacted with Defendant near the scene shortly after Melvin's death. Defendant's wallet containing his identification and social security cards was found near Melvin's residence. Shortly after gunshots were heard, Defendant knocked on the door of Locklear's residence, which was located near Melvin's residence. Brown's cell phone was also recovered near the crime scene, and Brown attempted to locate Defendant shortly after the gunshots had been heard. Because the evidence placed Defendant at or near the scene of the crime around the time of the victim's murder, a reasonable juror could find that Defendant had the opportunity to commit the felony that resulted in Melvin's death.
 

 Finally, it is undisputed that, regardless of who fired a weapon into Purdie's residence, an occupied dwelling, it resulted in Melvin's death. The shots Locklear heard in the mobile home park that night came from outside Melvin's residence. Although there were two weapons fired, based on the shell casings found at the scene, "[i]t is not necessary to support a conviction of felony-murder that defendant actually inflicted the fatal shot."
 
 State v. Peplinski
 
 ,
 
 290 N.C. 236
 
 , 240,
 
 225 S.E.2d 568
 
 , 571 (1976). When "several persons aid and abet each other" and one "fatally wounds the victim, all being present, each is guilty of murder in the first degree."
 
 Id
 
 . at 240-41,
 
 225 S.E.2d at 571
 
 . The State's
 
 *369
 
 evidence tended to show that Brown had come to Locklear's residence to meet with Defendant shortly after Melvin's death. Moreover, Defendant's wallet containing his identification and social security cards, along with Brown's iPhone, were found at the crime scene. The evidence tended to show that either Defendant or Brown likely fired the fatal shot. Regardless of who actually fired the fatal shot, however, Defendant could still be found guilty of felony murder.
 
 *505
 
 As our Supreme Court held,
 

 [i]f the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances,
 
 then it is for the jury to decide
 
 whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.
 

 Fritsch
 
 ,
 
 351 N.C. at 379
 
 ,
 
 526 S.E.2d at 455
 
 (emphasis added). Based upon the evidence introduced by the State, there was sufficient evidence from which a reasonable inference of Defendant's guilt could be drawn. The trial court did not err in denying Defendant's motion to dismiss, and the jury's verdict will not be disturbed by this Court.
 

 Conclusion
 

 The trial court did not err in denying Defendant's motion to dismiss because the State introduced substantial evidence of each essential element of both discharging a weapon into an occupied dwelling and felony murder. Defendant received a fair trial, free from error.
 

 NO ERROR.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Our shortening of the Latin phrase "
 
 Lex purgandum est.
 
 " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use
 
 purgandum
 
 to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.