ZACHARY, Judge.
 

 *370
 
 Jerry Thompson (defendant) appeals from the judgment sentencing him for convictions of felony possession of marijuana, possession with intent to sell or deliver marijuana, possession of drug paraphernalia, and possession of a firearm by a convicted felon. On appeal, defendant argues that the trial court erred by denying his motion seeking the suppression of evidence, and that the judgment sentencing him for felony possession of marijuana should be vacated on the grounds that he did
 
 *371
 
 not plead guilty to that offense. After review of defendant's arguments, in light of the record and the applicable law, we conclude that the factual findings in the order denying defendant's suppression motion did not resolve a pivotal disputed issue of fact, requiring us to vacate the judgment and remand for further findings. We further conclude that the judgment entered against defendant and the written transcript of plea, both of which were signed by the trial judge, are inconsistent, and we remand for resolution of this discrepancy.
 

 Factual and Procedural Summary
 

 On 10 April 2015, law enforcement officers executed a search warrant for an apartment on Basin Street, in Charlotte, North Carolina. When the officers arrived at the apartment, defendant was sitting in his car in front of the residence. Two officers approached defendant in order to prevent any interference with the execution of the search warrant, and remained near defendant while the apartment was being searched. During this time, defendant was asked to provide identification, which he did. Defendant also consented to a search of his person, which did not reveal contraband. At some point, another officer came out of the apartment and asked defendant for permission to search his car, and upon searching the trunk of defendant's car, found marijuana and a firearm. Defendant was arrested on charges of possession of drug paraphernalia, possession with the intent to sell or deliver marijuana, and possession of a firearm by a convicted felon.
 

 On 28 March 2016, defendant was indicted for possession of drug paraphernalia, possession with the intent to sell or deliver marijuana, felony possession of marijuana, maintaining a vehicle for the purpose of keeping or selling controlled substances, and possession of a firearm by a convicted felon. On 4 October 2016, defendant filed a motion seeking suppression of the evidence seized at the time of his arrest, on the grounds that the evidence was seized pursuant to an illegal search and seizure that violated his rights under the Fourth Amendment to the United States Constitution.
 

 The charges against defendant came on for trial beginning on 3 January 2017. A hearing was conducted prior to trial on defendant's motion to suppress. The evidence adduced at the hearing tended to show the following: Sergeant Michael Sullivan of the Charlotte-Mecklenburg Police Department testified that on 10 April 2015, he led a group of officers in the execution of a search warrant for the Basin Street apartment. The target of the search warrant was a woman. When the officers arrived, Sergeant Sullivan saw a person seated in the front seat of an automobile parked in front of the apartment building. Sergeant Sullivan
 
 *372
 
 approached the car, in order to make sure that the individual in the passenger seat was not the woman named in the search warrant, and to ensure that the person did not interfere with the execution of the search warrant. Defendant, who was the person sitting in the car, told Sergeant Sullivan that he did not live in the apartment, but that his girlfriend did.
 

 Sergeant Sullivan remained near defendant's car and informed defendant that the officers were executing a drug-related search
 
 *344
 
 warrant in his girlfriend's apartment. At the officer's request, defendant consented to a search of his person, which did not reveal the presence of contraband. Sergeant Sullivan then asked defendant for his identification, before "hand[ing] him off" ' to Officer Justin Price, giving Officer Price defendant's license, and going inside to supervise the search. Sergeant Sullivan left defendant with Officers Price and Blackwell, and had no further contact with defendant. Officer Price, however, testified that when he came outside, defendant was already in custody.
 

 Officer Michael Blackwell testified that he and Sergeant Sullivan remained with defendant during the search, and explained to defendant why the officers were there. Defendant told Officer Blackwell that the woman named in the search warrant was his girlfriend. After eight to ten minutes, Officer Hefner came outside and asked for permission to search defendant's car. Defendant consented to the search. Marijuana and a firearm were found in the trunk of the car. On cross-examination, Officer Blackwell testified that eight to twelve officers were present, that he and Sergeant Sullivan had approached defendant to ensure that no one interfered with their execution of the search warrant, and that both officers were armed and in uniform. Officer Mark Hefner testified that during the search, he "received information that the defendant was the supplier of the drugs." Accordingly, he obtained defendant's consent to search his car.
 

 Defendant testified that he was 61 years old and worked for the Red Cross. On 10 April 2015, he drove to the Basin Street apartment to visit his girlfriend, who was the person named in the search warrant. He was "taken aback" when a number of law enforcement officers arrived wearing "SWAT attire" and went inside. Officer Blackwell approached him and told him that he could not leave, and took his keys and wallet. Defendant waited for twenty or thirty minutes with the officers, before Officer Hefner came out of the apartment. Defendant denied giving the officers permission to search his car.
 

 Following the presentation of evidence and the arguments of counsel, the trial court orally denied defendant's motion to suppress.
 

 *373
 
 Defendant then pleaded guilty, pursuant to a plea bargain with the State, to possession of drug paraphernalia, possession with the intent to sell or deliver marijuana, and possession of a firearm by a convicted felon.
 
 [1]
 
 Under the terms of the plea agreement, the State would dismiss the charge of maintaining a vehicle for keeping or selling controlled substances, and defendant would receive a consolidated sentence for the remaining offenses. Defendant pleaded guilty while preserving his right to appeal the denial of his motion to suppress. The trial court sentenced defendant to a term of 13 to 25 months' imprisonment, suspended the sentence, and placed defendant on 24 months' supervised probation. On 5 January 2017, the trial court entered a written order denying defendant's suppression motion. Defendant gave notice of appeal to this Court.
 

 Standard of Review
 

 Defendant argues on appeal that the trial court erred by denying his suppression motion. "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 167-68,
 
 712 S.E.2d 874
 
 , 878 (2011) (citation omitted). "This Court reviews conclusions of law stemming from the denial of a motion to suppress
 
 de novo
 
 .... Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Borders
 
 ,
 
 236 N.C. App. 149
 
 , 157,
 
 762 S.E.2d 490
 
 , 498-99 (2014).
 

 Motion to Suppress
 

 Legal Principles
 

 The Fourth Amendment to the United States Constitution protects the "right of the people to be secure ... against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment is applicable
 
 *345
 
 to the states through the Due Process Clause of the Fourteenth Amendment. Article I, Section 20 of the North Carolina Constitution provides similar protection against unreasonable seizures. N.C. Const. art. I, § 20."
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 659,
 
 617 S.E.2d 1
 
 , 11 (2005) (citing
 
 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 441,
 
 446 S.E.2d 67
 
 , 69 (1994) ). However, not all interactions between citizens and law enforcement officers fall within the ambit of the Fourth Amendment:
 

 *374
 
 U.S. Supreme Court holdings carve out ... three tiers of police encounters: communication between the police and citizens involving no coercion or detention and therefore outside the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause.
 

 State v. Sugg,
 

 61 N.C. App. 106
 
 , 108,
 
 300 S.E.2d 248
 
 , 250 (1983) (citing
 
 United States v. Berry
 
 ,
 
 670 F.2d 583
 
 (5
 
 th
 
 Cir. 1982) ).
 

 Accordingly, a law enforcement officer does not require any suspicion of criminal activity to engage in a consensual interaction with a citizen, and in such a situation the protections of the Fourth Amendment are not implicated:
 

 Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.... Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.
 

 Florida v. Bostick
 
 ,
 
 501 U.S. 429
 
 , 434,
 
 111 S.Ct. 2382
 
 , 2386,
 
 115 L.Ed. 2d 389
 
 , 398 (1991) (internal quotations omitted).
 

 It is long-established that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."
 
 United States v. Mendenhall
 
 ,
 
 446 U.S. 544
 
 , 554,
 
 100 S.Ct. 1870
 
 , 1877,
 
 64 L.Ed. 2d 497
 
 , 509 (1980). As a result, "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' "
 
 INS v. Delgado
 
 ,
 
 466 U.S. 210
 
 , 215,
 
 104 S.Ct. 1758
 
 , 1762,
 
 80 L.Ed. 2d 247
 
 , 255 (1984) (quoting
 
 Mendenhall
 
 ,
 
 446 U.S. at 554
 
 ,
 
 100 S.Ct. at 1877
 
 ,
 
 64 L.Ed. 2d at
 
 509 ).
 

 Discussion
 

 In its order denying defendant's suppression motion, the trial court concluded that, at the time defendant was asked for consent to search his car, he "was neither seized nor in custody." On appeal, defendant
 
 *375
 
 argues that this conclusion was erroneous, and was not supported by the evidence adduced at the hearing. We conclude that the trial court's order failed to resolve disputed issues of fact that are central to our ability to conduct a meaningful appellate review.
 

 As noted above, "the United States Supreme Court has long held that the Fourth Amendment permits a police officer to conduct a brief investigatory stop of an individual based on reasonable suspicion that the individual is engaged in criminal activity."
 
 State v. Jackson
 
 ,
 
 368 N.C. 75
 
 , 77,
 
 772 S.E.2d 847
 
 , 849 (2015) (citing
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 30-31,
 
 88 S.Ct. 1868
 
 , 1884-85,
 
 20 L.Ed. 2d 889
 
 , 911 (1968) ). Reasonable suspicion requires "specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training."
 
 Watkins
 
 ,
 
 337 N.C. at 441
 
 ,
 
 446 S.E.2d at 70
 
 (citation omitted).
 

 Because the trial court concluded that defendant had not been seized, it did not address the issue of whether reasonable suspicion could have supported a seizure of defendant. However, it is undisputed that the law enforcement officers' interactions with defendant were not based upon suspicion of criminal activity. Officer Sullivan
 
 *346
 
 testified that defendant was not named in the search warrant and that he approached defendant to "make sure that [he] wasn't the target of the search warrant, and that [he] didn't interfere with the search warrant since [he was] in such close proximity to where we were going." Defendant consented to show Officer Sullivan his driver's license and to be searched, neither of which revealed anything suspicious. Similarly, Officer Blackwell agreed that "the purpose of [his] making contact [with defendant] was to ensure that he would not interfere with the execution of the search warrant." The State did not elicit testimony at the hearing suggesting that the officers suspected defendant of engaging in criminal behavior, and does not argue on appeal that reasonable suspicion existed to detain defendant. We have carefully reviewed the transcript and conclude that there was no evidence that the law enforcement officers approached defendant based on a reasonable suspicion of criminal activity. Therefore, if defendant was seized by law enforcement officers, the seizure was a violation of defendant's rights under the Fourth Amendment, and would require suppression of the evidence found in his trunk.
 
 See, e.g.
 
 ,
 
 Bostick
 
 ,
 
 501 U.S. at 433-34
 
 ,
 
 111 S.Ct. at 2385-86
 
 ,
 
 115 L.Ed. 2d at
 
 398 :
 

 The sole issue presented for our review is whether a police encounter on a bus of the type described above necessarily constitutes a "seizure" within the meaning of the Fourth Amendment. The State concedes, and we accept
 
 *376
 
 for purposes of this decision, that the officers lacked the reasonable suspicion required to justify a seizure and that, if a seizure took place, the drugs found in Bostick's suitcase must be suppressed as tainted fruit.
 

 As discussed above, a criminal defendant has been subjected to a seizure by police "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."
 
 Mendenhall
 
 ,
 
 446 U.S. at 554
 
 ,
 
 100 S.Ct. at 1877
 
 ,
 
 64 L.Ed. 2d at 509
 
 . "[T]he
 
 Mendenhall
 
 test does not take into account a defendant's subjective impressions of an encounter with police officers, but instead asks whether the police officers' actions would have led a 'reasonable person' to believe that he was not free to leave the scene."
 
 State v. Isenhour
 
 ,
 
 194 N.C. App. 539
 
 , 543,
 
 670 S.E.2d 264
 
 , 268 (2008) (citing
 
 Mendenhall
 
 ). In determining whether a defendant was seized, "[r]elevant circumstances include, but are not limited to, the number of officers present, whether the officer displayed a weapon, the officer's words and tone of voice, any physical contact between the officer and the individual, whether the officer retained the individual's identification, or property, the location of the encounter, and whether the officer blocked the individual's path."
 
 State v. Icard
 
 ,
 
 363 N.C. 303
 
 , 309,
 
 677 S.E.2d 822
 
 , 827 (2009).
 

 In this case, the trial court's findings generally established the following:
 

 1. An unspecified number of law enforcement officers executed a search warrant for an apartment on Basin Street, in Charlotte.
 

 2. The search was conducted during daylight hours.
 

 3. When the law enforcement officers arrived, defendant was seated in his car in front of the apartment building.
 

 4. While other officers conducted the search, Officers Sullivan and Blackwell approached defendant. The officers were armed and in uniform, but their weapons were not drawn.
 

 5. The officers approached defendant for two reasons: (1) to make sure that the person in the car was not the target of the search or a resident of the apartment, and (2) to ensure that the person in the car did not interfere with the search.
 

 6. Officer Sullivan told defendant why the officers were at the apartment. Officer Sullivan did not tell defendant that he had to remain at the scene.
 

 *377
 
 7. At some point "within the first ten minutes of their encounter" and after "the residence was secured," Officer Sullivan asked defendant for his identification.
 

 8. Officer Sullivan also asked defendant for permission to search his person. Defendant consented to the search, which did not reveal any contraband.
 

 *347
 
 9. After an unspecified period of time, Officer Price joined the group with defendant. Officer Sullivan gave Officer Price defendant's identification and left.
 

 10. After an unspecified period of time, Officer Hefner came outside and asked defendant for permission to search his car. Defendant consented to the search, during which marijuana and a firearm were found in the trunk.
 

 11. During the time that the officers were with defendant, he was not told that he could not leave.
 

 Most of these findings are generally undisputed by the parties, such as the finding that the officers did not draw their weapons. The trial court's findings that defendant was never told that he had to remain at the scene, and that defendant consented to the search of his car were the subject of conflicting testimony; however, it is appropriate for the court to resolve inconsistencies and weigh the credibility of conflicting testimony in making its findings.
 

 In arguing that he was seized, defendant places great emphasis upon his contention that the law enforcement officers retained his driver's license during the encounter. Defendant cites several cases, including
 
 State v. Jackson
 
 ,
 
 199 N.C. App. 236
 
 , 243,
 
 681 S.E.2d 492
 
 , 497 (2009), in which this Court stated, in analyzing whether the defendant had been seized, that "a reasonable person under the circumstances would certainly not believe he was free to leave without his driver's license and registration[.]" We find this argument persuasive. Indeed, we have not found any cases holding that a defendant whose identification or driver's license was held by the police without reasonable suspicion of criminal activity was nonetheless "free to leave." Moreover, it would defy common sense to interpret "free to leave" as meaning "free to leave and break the law by driving without a license," or "free to leave your car by the side of the road and proceed on foot."
 

 We also note that a recent opinion of this Court reached the same conclusion. In
 
 State v. Parker,
 
 2017 N.C. App. LEXIS *940, the defendant appealed from the denial of his motion to suppress evidence seized at the time of his arrest. The record showed that two law enforcement officers
 
 *378
 
 initially detained defendant and another person who were engaged in a verbal dispute which the officers feared would escalate into a physical fight. The officers separated the two people, checked defendant's driver's license, and determined that he was not subject to any outstanding warrants. While retaining possession of defendant's driver's license, the officer obtained defendant's consent to a search, which revealed the presence of narcotics. On appeal, the defendant argued that "when [the law enforcement officer] failed to return defendant's identification after finding no outstanding warrants and after the initial reason for the detention was satisfied, [and] he instead requested defendant's consent to search, the seizure was unlawful, and defendant's consent was not voluntarily given." This Court agreed, and held that "[a]bsent a reasonable and articulable suspicion to justify further delay, retaining defendant's driver's license beyond the point of satisfying the purpose of the initial detention-de-escalating the conflict, checking defendant's identification, and verifying [that] he had no outstanding warrants-was unreasonable."
 

 In its appellate brief, the State does not dispute the crucial significance of whether the officers kept defendant's license. Nor does the State cite any cases in which, although law enforcement officers confiscated the defendant's license without reasonable suspicion of criminal activity, it was nonetheless held that the defendant had not been seized. The State instead argues that the trial court's findings of fact fail to establish whether the officers retained defendant's license or returned it to him after examination. We agree with this contention.
 

 Witnesses at the hearing on defendant's suppression motion gave conflicting testimony with regard to the circumstances under which law enforcement officers took possession of defendant's driver's license and the time frame in which the relevant events occurred. Sergeant Sullivan testified that he and Officer Blackwell approached defendant upon arrival at the apartment, and that after the apartment was secured, he asked to see
 
 *348
 
 defendant's identification and searched his person.
 

 SERGEANT SULLIVAN: I asked him for his
 
 ID.
 
 About the time I was asking him for his ID, I was-I went-I handed him off. I think I handed him off to Officer Price, and I went inside to supervise the search warrant[.] ...
 

 PROSECUTOR: How long would you say you had been with the defendant at this point, when you first approached him?
 

 *379
 
 SERGEANT SULLIVAN: I was probably with him three minutes, you know, less than five.
 

 PROSECUTOR: And you stated that you gave the ID that the defendant handed to you to Officer Price, and then you went into the house?
 

 SERGEANT SULLIVAN: That's right.
 

 However, Officer Price testified that when he came outside after completing the search of the apartment, defendant was already in custody. Officer Blackwell, who was not asked about the confiscation of defendant's identification, testified that he and Sergeant Sullivan spent eight to ten minutes with defendant before Officer Hefner came outside and obtained defendant's permission to search his car. Officer Hefner testified that he did not recall how long he was inside the apartment, but that it usually took at least two hours to search a residence. Defendant testified that when he was searched, the officers took his keys and wallet, and that when Officer Blackwell ordered defendant not to leave, he had possession of defendant's wallet and keys. Defendant also testified that he stood outside with the officers for twenty or thirty minutes before Officer Hefner came outside. Thus, defendant testified that the officers retained his license, but the officers did not testify about this issue. Assuming that the law enforcement officers kept defendant's identification, the testimony is conflicting as to whether defendant's car was searched before, immediately after, ten minutes after, or a half-hour after defendant gave his license to Officer Sullivan.
 

 Counsel for defendant and the State offered contrasting interpretations of the testimony in their arguments to the trial court:
 

 MS. WALLWORK [Defense Counsel]: I will cut to the chase. That's what varies in Sergeant Sullivan's confiscation of Mr. Thompson's identification. That's what [
 
 United States v
 
 .]
 
 Black
 
 is about, that officers in
 
 Black
 
 attempted to make a voluntary contact. They took the identification of Nathaniel Black in that case and pinned it to their vest and continued on their way. The court in
 
 Black
 
 said that renders it a seizure. In this case we heard from Sergeant-
 

 ...
 

 MS. WALLWORK: We know from Officer Blackwell's testimony that that period of time, in the light most favorable to the State, was eight to ten minutes. That he was with Mr.
 
 *380
 
 Thompson outside the home while apparently Sergeant Sullivan had already gone back inside and Officer Price has Mr. Thompson's
 
 ID.
 
 So there's an eight to ten minute delay here. I would argue to the Court that that is a seizure, and that that seizure is without reasonable suspicion.
 

 In response, the prosecutor challenged defense counsel's interpretation of the testimony:
 

 MS. HINSON [Prosecutor]: Yes, Your Honor. Your Honor, I would argue that that point wasn't made as clear as Ms. Wallwork seems to assert it to the Court. Sergeant Sullivan did testify that he retrieved the defendant's identification and handed it to Officer Price. But when Officer Price testified, he said the first time he approached that scene and/or encountered the defendant was after he was in the residence and conducted the search. He at no point testified that he was handed a license, that he went inside for eight to ten minutes, and then came back out. And Sergeant Sullivan never testified that at any point he took a license, went inside for eight to ten minutes, and then came back out.... So I would argue, Your Honor, that the evidence does not say that the defendant's license was seized for that period of time. We know that it was taken by Sergeant Sullivan, and we know that at some point Officer Price ran his information,
 
 *349
 
 but that eight to ten minutes is to me a leap.
 

 In its order, the "judge must set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2016). "[T]he general rule is that [the trial court] should make findings of fact to show the bases of [its] ruling. If there is a material conflict in the evidence on
 
 voir dire
 
 , he
 
 must
 
 do so in order to resolve the conflict."
 
 State v. Phillips
 
 ,
 
 300 N.C. 678
 
 , 685,
 
 268 S.E.2d 452
 
 , 457 (1980) (emphasis in original) (citation omitted). " 'Findings and conclusions are required in order that there may be a meaningful appellate review of the decision' on a motion to suppress."
 
 State v. Salinas
 
 ,
 
 366 N.C. 119
 
 , 124,
 
 729 S.E.2d 63
 
 , 66 (2012) (quoting
 
 State v. Horner
 
 ,
 
 310 N.C. 274
 
 , 279,
 
 311 S.E.2d 281
 
 , 285 (1984) ). Remand is required if the trial court's order fails to resolve critical issues of fact:
 

 [W]hen the trial court fails to make findings of fact sufficient to allow the reviewing court to apply the correct legal standard, it is necessary to remand the case to the
 
 *381
 
 trial court. Remand is necessary because it is the trial court that "is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred."
 

 Salinas
 
 ,
 
 366 N.C. at 124
 
 ,
 
 729 S.E.2d at 67
 
 (quoting
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 620 (1982) ).
 

 In this case, the trial court's findings of fact do not resolve the question of whether the law enforcement officers returned defendant's license after examining it, or instead retained it, or the issue of the sequence of events and the time frame in which they occurred. Given that the officers conceded that their interaction with defendant was not based upon suspicion of criminal activity, a finding that officers kept defendant's identification would likely support the legal conclusion that he had been seized. A citizen "may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds."
 
 State v. Farmer
 
 ,
 
 333 N.C. 172
 
 , 186-87,
 
 424 S.E.2d 120
 
 , 128-29 (1993) (quoting
 
 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 497-98,
 
 103 S.Ct. 1319
 
 , 1324,
 
 75 L.Ed. 2d 229
 
 , 236 (1983) ). Because the court's findings of fact fail to resolve material issues, we vacate the judgment entered against defendant, and remand for the trial court to enter findings of fact that resolve all material factual disputes.
 

 Judgment Entered Against Defendant
 

 Defendant also argues that the judgment entered against him for felony possession of marijuana must be vacated on the grounds that he did not plead guilty to this offense. It is undisputed that defendant was indicted on charges of possession of drug paraphernalia, possession with the intent to sell or deliver marijuana, felony possession of marijuana, maintaining a vehicle for the purpose of keeping or selling controlled substances, and possession of a firearm by a convicted felon. It is also agreed by the parties that, pursuant to a plea arrangement, the State dropped the charge of maintaining a vehicle for the purpose of keeping or selling controlled substances, and that defendant pleaded guilty to the charges of possession of drug paraphernalia, possession with the intent to sell or deliver marijuana, and possession of a firearm by a convicted felon. However, upon review of the record documents and the transcript, we note several inconsistencies in the treatment of the charge of felony possession of marijuana.
 

 *382
 
 During the hearing on the plea arrangement, the prosecutor stated that defendant was charged with four offenses, including felony possession of marijuana, and defendant's counsel stated that she was authorized to enter a plea of guilty to the offenses, subject to defendant's reservation of the right to appeal the denial of his suppression motion. In its colloquy with defendant, the court first enumerated the offenses to which defendant was pleading guilty, and included felony possession of marijuana. However, the court then asked defendant if he was prepared to enter a plea of guilty to "those three charges" and, when the court orally pronounced judgment, it did not include felony possession of marijuana in the recitation of
 
 *350
 
 the charges to which defendant was pleading guilty.
 

 Of greater significance than the inconsistencies among the oral statements of the parties is the fact that the written documents signed by the trial court are not consistent. The written transcript of plea states that defendant is pleading guilty to the three offenses about which there is no dispute, and does
 
 not
 
 state that defendant is pleading guilty to felony possession of marijuana.
 
 [2]
 
 However, the judgment entered against defendant includes felony possession of marijuana as a charge for which judgment is entered. We conclude that the record is inconsistent and unclear as to whether defendant pleaded guilty to felony possession of marijuana.
 

 The State argues that defendant is not entitled to review of the issue of whether the judgment sentenced him for an offense of which he was not convicted. The State characterizes defendant's argument as a challenge to the trial court's compliance with N.C. Gen. Stat. § 15A-1022 (2016), which requires a court to make certain inquiries of a defendant before accepting a plea of guilty. The defendant is not, however, arguing that the trial court failed to conduct the requisite colloquy. Moreover, we easily conclude that if, as is posited by defendant, he was sentenced for an offense of which he was not convicted, it is in the interest of preserving the integrity of our judicial system to address this matter. We choose to treat defendant's appeal as a petition for issuance of a writ of certiorari, in order to reach this issue.
 

 *383
 
 On appeal, defendant stresses that he "is not seeking to withdraw his guilty plea" or to change his sentence, but simply wants the "misstatement in the judgment" corrected. In essence, defendant characterizes this as a clerical error. The State directs our attention to the parts of the record that tend to support the conclusion that defendant pleaded guilty to felony possession of marijuana. We conclude that, on the basis of the record as presently constituted, it is not possible to determine whether judgment was properly entered on the charge of felony possession of marijuana. As the judgment must be vacated and this matter remanded, we direct the court to take the necessary steps to resolve the discrepancy between the transcript of plea and the written judgment.
 

 Conclusion
 

 For the reasons discussed above, we conclude that the trial court's order denying defendant's suppression motion failed to include findings of fact resolving significant disputed issues of fact. As a result, we must vacate the judgment against defendant and remand for entry of additional findings. We further conclude that the transcript of plea and the judgment are inconsistent and remand for correction of this discrepancy.
 

 VACATED AND REMANDED.
 

 Judge DAVIS concurs.
 

 Judge BERGER dissents with separate opinion.
 

 BERGER, Judge, dissenting in separate opinion.
 

 Because Defendant was never seized by Charlotte-Mecklenburg Police Department ("CMPD") officers within the meaning of the Fourth Amendment, I would affirm the trial court's denial of the motion to suppress, and respectfully dissent.
 

 The North Carolina Supreme Court has stated that law enforcement officers "may approach individuals in public to ask them questions and even request consent to search their belongings, so long as a reasonable person would understand that he or she could refuse to cooperate.... Such encounters are considered consensual and no reasonable suspicion is necessary."
 
 State v. Brooks
 
 ,
 
 337 N.C. 132
 
 , 142,
 
 446 S.E.2d 579
 
 , 585-86 (1994) (citations omitted). Only when the encounter ceases to be consensual are Fourth Amendment concerns implicated.
 
 State v. Garcia
 
 ,
 
 197 N.C. App. 522
 
 , 528,
 
 677 S.E.2d 555
 
 , 559 (2009). The initial
 
 *384
 
 inquiry is
 
 *351
 
 "whether under the totality of the circumstances a reasonable person would feel that he was not free to ... terminate the encounter."
 
 Brooks
 
 , 337 N.C. at 142, 446 S.E.2d at 586 (citations omitted).
 
 [3]
 

 The following findings of fact by the trial court were supported by competent evidence in the record and transcript, and, therefore, these findings are conclusively binding on appeal,
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) :
 

 (1) CMPD officers were "going to execute a search warrant at 404 Basin Street, an apartment."
 

 (2) Before arriving at the location, the officers were advised that an individual in a Volvo "was parked in front of the residence."
 

 (3) Sergeant Sullivan went to the Volvo while his team executed the search warrant "because of its proximity to the apartment to be searched."
 

 (4) Sergeant Sullivan approached the Volvo to make sure the target of the search warrant was not in the vehicle, and "to assure that [the] person did not interfere with the execution of the search warrant."
 

 (5) Defendant was the occupant of the Volvo, and when asked by Sergeant Sullivan if he lived at 404 Basin Street, "he replied 'No' but ... that his girlfriend did."
 

 (6) Although in uniform and armed, officers did not have their weapons drawn.
 

 (7) Sergeant Sullivan and Defendant stood next to each other as Defendant was advised that a search warrant was being executed at his girlfriend's apartment.
 

 (8) Sergeant Sullivan "did not tell the Defendant that he had to remain at the scene."
 

 *385
 
 (9) Within ten minutes of his initial contact with Defendant, Sergeant Sullivan asked Defendant for identification and for consent to search his person. Defendant consented to the search of his person, which revealed no weapons or contraband.
 

 (10) Sergeant Sullivan provided Defendant's identification to another officer.
 

 (11)
 
 "[A]fter
 
 [the apartment] had been secured," Officer Hefner left the residence to speak with Defendant because he had "received information that the Defendant was the supplier of the drugs
 
 that were being searched for
 
 inside the residence."
 
 [4]
 
 (Emphasis added).
 

 (12) Officer Hefner asked for and received consent to search Defendant's vehicle.
 

 (13) Defendant assisted CMPD officers with the search of his Volvo.
 

 (14) "Defendant's encounter with the police ... was voluntary and consensual."
 

 (15) Defendant "was never told nor was it intimated by word or
 
 deed
 
 that he was not free to leave at any point." (Emphasis added).
 

 Defendant's behavior was not indicative of an involuntary encounter with CMPD officers. It was permissible for Sergeant Sullivan to approach Defendant in a public area at any time to ask questions. Sergeant Sullivan did just that: he engaged Defendant to explain why CMPD officers were present on the scene, determine if he was the target of the search warrant, and prevent interference. The two stood outside Defendant's vehicle while officers gained entry to the apartment.
 

 *352
 
 Defendant was never told he could not leave the scene, never placed in handcuffs, and never restrained. Defendant was not required to cooperate or even speak with Sergeant Sullivan. Competent evidence also showed that Defendant was calm and never asked if he could leave the scene.
 
 [5]
 

 *386
 
 Sergeant Sullivan asked for Defendant's identification and "if he would allow" Sergeant Sullivan to search his person for drugs and weapons. Defendant provided his identification and consented to the search even though he was not required to do so. There is no evidence that Sergeant Sullivan or any other CMPD officer used force or intimidation to obtain the identification or consent to search.
 

 After the residence was secured, and while execution of the search warrant was taking place, Sergeant Sullivan gave Defendant's identification to another officer and went into the residence. Defendant did not request his identification be returned, nor did he request to go about his business.
 

 Shortly thereafter, Officer Hefner approached Defendant and obtained consent to search the vehicle. Defendant assisted Officer Hefner in the search. Defendant's interaction with CMPD officers was relatively brief under the circumstances. Officer Blackwell, who assisted with Defendant at the scene, estimated that the time from Sergeant Sullivan's initial contact with Defendant until Defendant consented to search of his vehicle was approximately eight to ten minutes.
 

 The majority focuses on the location of Defendant's identification as the sole reason to vacate Defendant's conviction. We are required, however, to look at more than one fact. Under the totality of the circumstances, a reasonable person would have felt free to decline the officers' requests and terminate this encounter at any point up to the discovery of more than 85 grams of marijuana, $4,195.77 in cash, and a firearm in the trunk of the vehicle.
 

 The trial court's findings support the conclusion that Defendant's encounter with CMPD officers was "voluntary and consensual." No additional findings regarding Defendant's identification, or any other matter, are necessary to support that conclusion.
 

 Moreover, even if we assume that Defendant was seized as Defendant argues and the majority finds, the search of the vehicle was still valid. The majority cites
 
 State v. Jackson,
 

 199 N.C. App. 236
 
 , 241-42,
 
 681 S.E.2d 492
 
 , 496 (2009), and
 
 State v. Parker
 
 , --- N.C. App. ----, ----,
 
 807 S.E.2d 617
 
 , 622 (2017), for the proposition that retaining a defendant's identification "beyond the point of satisfying the purpose of the initial detention" is unreasonable.
 
 Parker
 
 , 807 S.E.2d at ----. While this may be a correct statement of the law under the facts of those cases, the initial purpose of the detention under our facts had not been satisfied.
 

 *387
 
 The trial court found that CMPD officers approached Defendant because of his "proximity to the apartment to be searched[,]" to make sure the target of the search was not in the vehicle, and to prevent that person from interfering with execution of the search warrant. Defendant was parked in front of the residence, and in close proximity to the area in which the officers would be executing the search warrant. While speaking with Defendant, officers determined that he did in fact have a connection to the residence to be searched because his girlfriend was the target of the search warrant. There is no evidence that Defendant was detained by CMPD officers beyond the point of satisfying their initial purpose to prevent interference with execution of the search warrant.
 

 In addition, individuals with a "connection to the residence to be searched" may be detained within the "immediate vicinity of the premises to be searched."
 
 Bailey v. U.S.
 
 ,
 
 568 U.S. 186
 
 , 197, 201,
 
 133 S.Ct. 1031
 
 , 1040, 1042,
 
 185 L.Ed. 2d 19
 
 , 31, 33-34 (2013) (factors to consider in determining what constitutes "immediate vicinity" include, but are not limited to, the "lawful limits of the premises" to be searched, the individual was
 
 *353
 
 "within the line of sight" of the property to be searched, the ability to re-enter the property, and "other relevant factors"). "An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure."
 
 Muehler v. Mena
 
 ,
 
 544 U.S. 93
 
 , 98,
 
 125 S.Ct. 1465
 
 , 1470,
 
 161 L.Ed. 2d 299
 
 , 307 (2005) (citation and internal quotation marks omitted).
 

 Defendant here was in the immediate vicinity of the apartment to be searched, and CMPD officers determined that Defendant did in fact have a connection with the apartment. While in close proximity to the apartment, Defendant certainly had the ability to disrupt or otherwise interfere with the officers as they conducted the search. CMPD officers had the authority to detain Defendant incident to the search.
 

 For these reasons, I would affirm the denial of Defendant's motion to suppress.
 

 As to Defendant's second issue concerning his conviction for felony possession of marijuana, Defendant has requested that the judgment entered against him be corrected to accurately reflect the offenses for which he pleaded guilty. Neither the plea transcript nor the colloquy between the trial court and Defendant reference the possession of marijuana charge that is set forth on the judgment. Judgment should simply be arrested as to that charge, or the matter should be remanded for correction of the clerical error.
 

 [1]
 

 As discussed elsewhere in this opinion, there is a dispute as to whether defendant also pleaded guilty to felony possession of marijuana.
 

 [2]
 

 The Notice of Dismissal recites that the State is dismissing the charge of maintaining a vehicle in exchange for defendant's agreement to plead guilty to the other four offenses, including felony possession of marijuana. However, this document was not filed until the day
 
 after
 
 judgment was entered against defendant. Moreover, it is not signed by the trial court.
 

 [3]
 

 This case brings to mind a famous scene from Star Wars. In the first movie,
 
 Episode IV, A New Hope
 
 , Obi-Wan Kenobi, Luke Skywalker, R2-D2, and C-3PO arrive in Mos Eisley and are greeted by Stormtroopers. A Stormtrooper asks Skywalker for identification, and with a wave of his hand, Kenobi uses a Jedi mind trick to avoid Imperial authorities. Kenobi asserts that the Stormtrooper does not need to see Skywalker's identification and that he can go about his business because "these aren't the droids [Stormtroopers] are looking for." Unfortunately for Defendant, he consented to this encounter with the authorities, and these were the drugs that officers were looking for.
 

 [4]
 

 An active search of the apartment was taking place when Officer Hefner made contact with Defendant.
 

 [5]
 

 From the findings of fact, it appears the trial court gave Defendant's testimony little to no weight. The trial court asked defense counsel during her argument if the factual questions to be resolved were a matter of "credibility," and the trial court's findings are consistent with the officers' testimony.