STATE OF NORTH CAROLINA v. CURTIS ALLEN JACKSON

No. COA08-1517

(Filed 18 August 2009)

### 1. Search and Seizure— traffic stop—extended—seizure continued

A passenger in a car that has been stopped by a law enforcement officer is still seized when the stop is extended; a passenger would not feel any freer to leave when the stop is lawfully or unlawfully extended, especially under circumstances such as those in this case where the officer was questioning the driver away from the vehicle while the passenger waited in the vehicle.

STATE v. JACKSON

[199 N.C. App. 236 (2009)]

A passenger subject to detention beyond the scope of the initial seizure is still seized under the Fourth Amendment and has standing to challenge the constitutionality of the extended detention.

**2. Constitutional Law— traffic stop—extended seizure and search—not consensual**

The search of a vehicle was unconstitutional where the initial stop rose from a suspicion that the driver was without a valid license; the officer extended the stop beyond what was necessary to confirm or dispel that suspicion, asking if there was anything illegal in the vehicle and whether she could search the vehicle; there was no evidence which could have provided the officer with reasonable and articulable suspicion to justify the extension of the detention; and there was no evidence that the encounter became consensual after the officer's initial suspicion was dispelled because there was no evidence that the driver's documentation was returned. A reasonable person would not have believed he was free to leave without his driver's license and registration.

**3. Constitutional Law— fruit of poisonous tree—traffic stop extended without reasonable and articulable suspicion**

A weapon and cocaine seized from a vehicle were discovered as a direct result of an illegal search and should have been suppressed as fruit of the poisonous tree. The cocaine found in defendant's sock at the jail was also the direct result of the illegal vehicle search and should also have been suppressed.

Appeal by Defendant from judgment entered 17 July 2008 by Judge James U. Downs in Rutherford County Superior Court. Heard in the Court of Appeals 23 April 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe and Special Deputy Attorney General Robert T. Hargett, for the State.*

*Michele Goldman for Defendant.*

STEPHENS, Judge.

*I. Procedural History and Factual Background*

On 31 March 2008, Defendant was indicted on charges of possession with intent to sell and deliver cocaine and carrying a concealed weapon. On 23 May 2008, Defendant filed a motion to suppress the

cocaine and weapon found during searches of Defendant and the vehicle in which Defendant was a passenger. Defendant's motion was heard on 16 July 2008 in Rutherford County Superior Court.

The evidence presented by the State at the hearing tended to show the following: On 29 January 2008, Deputy Lori Bradley ("Bradley") of the Rutherford County Sheriff's Department was on duty in her patrol car on the side of a highway in Rutherford County. At approximately 4:00 p.m., an Explorer with three male occupants, one of whom was Defendant, passed Bradley's patrol car. Because the occupants "appeared to tense up when they went by," Bradley pulled out behind the Explorer and followed it for several miles. Bradley observed the vehicle brake and saw Defendant in the front passenger seat "put on a hood as if—if somebody might be trying to hide their identity." Bradley "ran the tag" of the Explorer and found it registered to John Roth ("Roth") of North Carolina. As she followed the vehicle, Bradley observed no problems with the manner in which the vehicle was driven, although she testified that it appeared to her "that [the occupants] were acting a little suspicious[.]" Bradley followed the vehicle until she was informed by Communications that Roth's license was inactive. Because the registered owner of the vehicle had an inactive license, and because the driver of the vehicle matched the description of the registered owner, Bradley pulled the vehicle over on suspicion that the driver was operating the vehicle without a license.

Bradley had the driver step out of the vehicle and patted him down because "[n]ormally, that is what we do." Bradley confirmed that the driver was John Roth and asked him about his expired North Carolina driver's license. Roth explained that he had moved back to North Carolina from Kentucky three weeks earlier, and had a valid Kentucky driver's license. Roth gave Bradley his Kentucky license and she went back to her vehicle to speak with Communications. Within a few minutes, Sergeant Allen Green ("Green") and Deputy Brian Atkins ("Atkins") arrived as backup. While Bradley checked Roth's driver's license, Atkins obtained the registration card from the vehicle. Atkins also obtained the identity of Defendant and the other passenger. A search on the names of the three occupants revealed no outstanding warrants.

After checking Roth's license, Bradley advised Roth that there were no problems with his license and explained to him that he needed to update his information with the North Carolina

Department of Motor Vehicles. "Because there was confusion with Mr. Roth finding out what the problem was with his license and all that and explaining everything to him[,]" the process took about 20 minutes.

Bradley testified that "[r]ight after the traffic stop was pretty much over," she asked Roth

> if there was anything illegal in the vehicle. He advised no. I asked if there was, specific, like, weapons, marijuana, any kind of drugs. He said no. I asked him if I could search the vehicle. Mr. Roth replied—first he said "the vehicle?" as in a question. And then he replied, "You can search the vehicle if you want to."

The three men then exited the vehicle and stood with Green while Bradley and Atkins searched the Explorer. In the back passenger door panel, Atkins discovered a bag of white powder which was later determined to be cocaine. When none of the men claimed the bag, the three men were placed in handcuffs "for officer safety reasons."

When Atkins resumed the search, a gun fell out of the bottom of the door panel where the cocaine had been discovered. As with the cocaine, none of the men claimed ownership of the gun. The officers then arrested Roth, Defendant, and the other passenger and transported them to the Rutherford County jail. At the jail, Defendant was searched and a bag of cocaine was discovered in Defendant's sock.

Based on the foregoing evidence, Judge Downs denied Defendant's motion to suppress, concluding, *inter alia*, that both the search of Roth's vehicle and the post-arrest search of Defendant were constitutional. Defendant reserved his right to appeal the denial of his motion and, after the State dismissed the charge of carrying a concealed weapon, Defendant entered a guilty plea to the reduced charge of simple possession of cocaine. Defendant was sentenced to six to eight months imprisonment. The trial court suspended the sentence and placed Defendant on 36 months supervised probation. **[R p 22]** Defendant appeals.

## II. Discussion

### A. Standing

**[1]** On appeal, Defendant argues that the trial court erred in denying Defendant's motion to suppress because the cocaine and the weapon were the fruits of an unlawfully extended and, thus, unconstitutional seizure. Before we address the merits of Defendant's appeal, we must

first determine whether Defendant has standing to challenge the constitutionality of the allegedly unconstitutional seizure.

This Court has held that when a traffic stop is illegally extended, the seizure becomes unlawful and the *driver* may challenge the constitutionality of the extended seizure. *See State v. Falana*, 129 N.C. App. 813, 816-17, 501 S.E.2d 358, 360 (1998) (unjustified delay after the initial purpose for the stop has been addressed is an unreasonable seizure in violation of the Fourth Amendment). The question before us is whether a *passenger* in the detained vehicle may also challenge the constitutionality of the extension of the seizure. We hold that a passenger may.

In *Brendlin v. California*, 551 U.S. 249, 168 L. Ed. 2d 132 (2007), the United States Supreme Court concluded that when a police officer makes a traffic stop, a passenger in the stopped vehicle, like the driver, is seized within the meaning of the Fourth Amendment because a reasonable person under such circumstances would not feel free to leave. Accordingly, the Court held that a passenger may challenge the constitutionality of the initial stop. *Id.* at 251, 168 L. Ed. 2d at 136.

Applying this same reasoning to the present issue, we must conclude that a passenger in a car that has been stopped by a law enforcement officer is still seized when the stop is extended. A passenger would not feel any freer to leave when the stop is lawfully or unlawfully extended, especially under circumstances such as those extant in this case where the officer was questioning the driver away from the vehicle while the passengers waited in the vehicle. This conclusion is further supported by the following reasoning of the *Brendlin* Court regarding the effect of its decision:

> Holding that the passenger in a private car is not (without more) seized in a traffic stop would invite police officers to stop cars with passengers regardless of probable cause or reasonable suspicion of anything illegal. The fact that evidence uncovered as a result of an [unconstitutional] stop would still be admissible against any passengers would be a powerful incentive to run the kind of "roving patrols" that would still violate the driver's Fourth Amendment right.

*Id.* at 263, 168 L. Ed. 2d at 143 (footnote and citation omitted).

Similarly, denying a passenger the right to challenge the constitutionality of an allegedly suspicionless search or detention subsequent

to a traffic stop would provide the same dangerous incentive for an officer to search a stopped vehicle after a lawful traffic stop ends, without suspicion or consent, and to then use any evidence of wrong-doing found in the vehicle to arrest and prosecute any of the vehicle's passengers. The Fourth Amendment cannot be interpreted to allow such an unjust result to the passenger and such a bold conflagration of the driver's constitutional rights. *Cf. United States v. Martinez-Fuerte*, 428 U.S. 543, 555, 49 L. Ed. 2d 1116, 1126 (1976) ("The Fourth Amendment imposes limits on search and seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.").

Accordingly, we hold that a passenger subject to detention beyond the scope of the initial seizure is still seized under the Fourth Amendment and, therefore, has standing to challenge the constitutionality of the extended detention. *See Brendlin*, 551 U.S. at 251, 168 L. Ed. 2d at 136 (a person seized by the police is entitled to challenge the government's action under the Fourth Amendment).

### B. Motion to Suppress

[2] We now turn to Defendant's contention that the trial court erred in denying Defendant's motion to suppress because the cocaine and the weapon were the fruits of an unlawfully extended and, thus, unconstitutional seizure. The applicable standard of review for a motion to suppress is explicated in *State v. Hernandez*, 170 N.C. App. 299, 612 S.E.2d 420 (2005), as follows:

> Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [its] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion. However, the trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*Id.* at 304, 612 S.E.2d at 423 (internal quotation marks and citations omitted).

A law enforcement officer may stop and briefly detain a vehicle and its occupants if the officer has reasonable, articulable suspicion that criminal activity may be afoot. *State v. Morocco*, 99 N.C. App. 421, 427, 393 S.E.2d 545, 548 (1990). "Generally, the scope of the detention must be carefully tailored to its underlying justification." *Falana*, 129 N.C. App. at 816, 501 S.E.2d at 360 (internal quotation marks and citation omitted). Once the original purpose of the stop

has been addressed, in order to justify further delay, there must be grounds which provide the detaining officer with additional reasonable and articulable suspicion or the encounter must have become consensual. *State v. Myles*, 188 N.C. App. 42, 45, 654 S.E.2d 752, 755, *aff'd per curiam*, 362 N.C. 344, 661 S.E.2d 732 (2008). Where no grounds for a reasonable and articulable suspicion exist and where the encounter has not become consensual, a detainee's extended seizure is unconstitutional. *See id.*

The scope of the detention in this case was necessarily limited to confirming or dispelling Bradley's suspicion that Roth was operating his vehicle without a license. *See State v. Fisher*, 141 N.C. App. 448, 458, 539 S.E.2d 677, 684 (2000) (officer may ask limited number of questions to try to obtain information confirming or dispelling officer's suspicions), *disc. review denied*, 353 N.C. 387, 547 S.E.2d 420 (2001). Once Bradley determined that Roth had a valid license and explained "the things [Roth] needed to do with DMV," the original purpose of the stop had been addressed.

The State contends that "[D]efendant's argument that the deputy unlawfully extended the detention is unfounded" as "[t]here is no 'extension' as claimed by [D]efendant." However, Bradley testified that "[r]ight after the traffic stop was pretty much over," Bradley continued her interrogation of Roth, asking

> if there was anything illegal in the vehicle. He advised no. I asked if there was, specific, like, weapons, marijuana, any kind of drugs. He said no. I asked him if I could search the vehicle. Mr. Roth replied—first he said "the vehicle?" as in a question. And then he replied, "You can search the vehicle if you want to."

Such interrogation was indeed an extension of the detention beyond the scope of the original traffic stop as the interrogation was not necessary to confirm or dispel Bradley's suspicion that Roth was operating without a valid driver's license and it occurred after Bradley's suspicion that Roth was operating without a license had already been dispelled. Accordingly, for this extended detention to have been constitutional, Bradley must have had grounds which provided a reasonable and articulable suspicion or the encounter must have become consensual. *See Myles*, 188 N.C. App. at 45, 654 S.E.2d at 755.

The State does not argue that Bradley had reasonable and articulable suspicion to extend the stop. Furthermore, the occupants of the vehicle had been cooperative with the officers throughout the stop, and Atkins confirmed "there were no problems with any of these

folks" while the driver's license issue was being resolved. In addition, there were no pending warrants for any of the vehicle's occupants. Accordingly, there was no evidence which could have provided Bradley with reasonable and articulable suspicion to justify the extension of the detention.

Furthermore, there is no evidence that the encounter became consensual after Bradley's suspicion that Roth was operating without a license was dispelled. Generally, an initial traffic stop concludes and the encounter becomes consensual only after an officer returns the detainee's driver's license and registration. *See State v. Kincaid*, 147 N.C. App. 94, 100, 555 S.E.2d 294, 299 (2001) (holding that because a reasonable person would have felt free to leave when his documents were returned, the initial seizure concluded when the officer returned the documents to defendant); *see also Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398 (1991) ("So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (internal quotation marks and citation omitted)). "Furthermore, the return of documentation would render a subsequent encounter consensual *only if* a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information." *Kincaid*, 147 N.C. App. at 99, 555 S.E.2d at 299 (internal quotation marks and citation omitted) (emphasis added).

Here, the evidence establishes that Bradley took Roth's driver's license to her patrol car and that Atkins brought the vehicle registration card to the patrol car. However, there is no evidence in the record that Roth's documentation was ever returned. As a reasonable person under the circumstances would certainly not believe he was free to leave without his driver's license and registration, Bradley's continued detention and questioning of Roth after determining that Roth had a valid driver's license was not a consensual encounter. Accordingly, the extended detention of Defendant was unconstitutional and Roth's eventual consent to search the vehicle was tainted by the illegality of the extended detention, thus rendering Roth's consent ineffective to justify the search. *See Florida v. Royer*, 460 U.S. 491, 507-08, 75 L. Ed. 2d 229, 243 (1983) (holding that because defendant was illegally detained when he consented to the search, that consent "was tainted by the illegality and was ineffective to justify the search"). Consequently, the search of the vehicle was unconstitutional. *See Myles*, 188 N.C. App. at 51, 654 S.E.2d at 758.

[3] We must now determine whether the weapon and the cocaine were the fruits of the illegal detention and search such that the evidence should have been suppressed.

Evidence that is discovered as a direct result of an illegal search or seizure is generally excluded at trial as fruit of the poisonous tree unless it would have been discovered regardless of the unconstitutional search. *See Wong Sun v. United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455 (1963). This Court must ascertain

"whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*State v. Barnard*, 184 N.C. App. 25, 40, 645 S.E.2d 780, 790 (2007) (quoting *Wong Sun*, 371 U.S. at 487-88, 9 L. Ed. 2d at 455 (quotation marks and citation omitted)), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008).

In this case, the cocaine and weapon found in the car were discovered as a direct result of the illegal search and, therefore, should have been suppressed as fruit of the poisonous tree. *Wong Sun*, 371 U.S. at 485, 9 L. Ed. 2d at 455. Furthermore, because Defendant was arrested as a consequence of the discovery of cocaine and a weapon in the vehicle, the cocaine found in Defendant's sock at the jail was the direct result of the officers' exploitation of the illegal search of the vehicle and could not have been discovered "by means sufficiently distinguishable to be purged of the primary taint." *Barnard*, 184 N.C. App. at 40, 645 S.E.2d at 790. Therefore, the evidence of the cocaine found in Defendant's sock should have been suppressed. *See id.* Accordingly, we hold that the trial court erred in denying Defendant's motion to suppress.

In light of this holding, we need not address Defendant's remaining argument. The trial court's order denying Defendant's motion to suppress is REVERSED and its judgment is VACATED.

REVERSED and VACATED.

Judges BRYANT and GEER concur.