*743 DILLON, Judge, dissenting.
*789 I believe that Defendant's encounter with the police officer was a Fourth Amendment seizure. However, I believe that the matter should be remanded for more findings on the issue of whether the seizure was constitutionally reasonable. Therefore, my vote is to vacate the order denying Plaintiff's motion to suppress and to remand the matter to the trial court for additional findings regarding the reasonableness of the seizure, in order to balance the public interest served by the stop with Defendant's right to be free from arbitrary interference by law enforcement officers. Brown v. Texas , 443 U.S. 47, 50, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).
A. The encounter was a seizure.
The trial court found as follows: A uniformed police officer arrived in a neighborhood in his marked patrol car to serve arrest warrants on the occupant of a particular house. While the officer was standing outside his car near the house, he saw Defendant approaching in a vehicle, whereupon he waved both of his arms above his head, gesturing Defendant to stop his vehicle. The officer's reason for stopping Defendant was to gather "intel" about the house and the person named in the arrest warrants from someone he thought might live nearby. However, once Defendant stopped his vehicle, the officer detected an odor of alcohol on Defendant's breath.
I believe that this encounter was a Fourth Amendment seizure. A seizure occurs where police conduct would " 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " Florida v. Bostick , 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Michigan v. Chesternut , 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) ). And here, I believe that any reasonable motorist in Defendant's position-seeing a uniformed officer standing next to a marked patrol car waving his arms, gesturing to the motorist to stop-would feel compelled to stop, as Defendant did here. The subjective intent of the officer is irrelevant in this analysis. State v. Davis , 305 N.C. 400, 410, 290 S.E.2d 574, 581 (1982) (holding that the determination is based on "an objective test").[1]
Further, the seizure had not ended by the time the officer had detected the odor of alcohol. That is, nothing had occurred that would have lead a reasonable motorist in Defendant's position to believe that *790 he was no longer compelled to remain.[2] Rather, as soon as Defendant stopped and before any meaningful communication had occurred, the officer smelled alcohol coming from inside Defendant's truck, leading to the charge for which Defendant was convicted. If, for example, prior to detecting the odor of alcohol, the officer had told Defendant that he had merely stopped Defendant to ask some questions about the neighborhood, then perhaps the seizure became a consensual encounter. Thus any subsequent detection of alcohol by the officer likely would have been admissible. But the findings do not suggest that the seizure had transformed into a consensual encounter at the time the officer detected the odor of alcohol. Therefore, I conclude, at that time, Defendant was still subject to a Fourth Amendment seizure.
B. Whether the seizure was reasonable requires more findings.
The fact that the officer had no reasonable suspicion that Defendant was involved in criminal activity does not necessarily mean that the seizure was unconstitutional. The United States Supreme Court has held that, *744 in some circumstances, an officer may conduct an "information stop" of a random passing motorist as part of an investigation of the area. See Illinois v. Lidster , 540 U.S. 419, 426-27, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004) (holding that a checkpoint set up to ask passing motorists about a killing which occurred on the same street was reasonable). The Court recognized in Lidster that a "[highway] stop [which] lack[s] individualized suspicion cannot by itself determine the constitutional outcome.... [S]pecial law enforcement concerns will sometimes justify highway stops without individualized suspicion." Id. at 424, 124 S.Ct. 885. The Court instructed that the reasonableness of such stops must be judged "on the basis of individual circumstances," and that in judging the circumstances, courts must "look to 'the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.' " Id. at 426-27, 124 S.Ct. 885 (quoting Brown , 443 U.S. at 50, 99 S.Ct. 2637 ); see also State v. Woldt , 293 Neb. 265, 271, 876 N.W.2d 891, 896 (2016) (citing state and federal cases from around the country which have applied Lidster to non-checkpoint stop cases). *791 Here, the trial court made a number of findings concerning the officer's reasons for stopping Defendant. However, I believe that the matter needs to be remanded to allow the trial court to make additional findings concerning the reasonableness of the stop, giving consideration to the guidance provided in Lidster . Certainly, the safety of our law enforcement officers is a matter of grave public concern. So too is the proper and timely execution of arrest warrants. And the officer's stop of Defendant in this case might advance these public interests. The trial court needs to make additional findings to balance these public interests against Defendant's constitutionally protected interests. For example, it might be appropriate for the trial court to consider whether the officer was serving arrest warrants on someone who had committed a violent crime or on someone who merely failed to appear in court for a traffic ticket. Further, it might be appropriate for the trial court to consider the importance of the information the officer was seeking to obtain and the circumstances which led the officer to believe that Defendant might have such information.
Accordingly, my vote is to vacate the trial court's order and remand the matter for more findings concerning the reasonableness of the seizure.

Indeed, our law requires a motorist to comply with any lawful direction from an officer related to traffic control. N.C. Gen. Stat. § 20-114.1(a). In the present case, there is no finding to indicate that a reasonable motorist in Defendant's position would know that the officer's hand gestures were merely intended as a request , rather than a command, to stop or whether the officer was gesturing for the purpose of controlling traffic.

A seizure ends when a detainee would no longer feel obligated to remain. By way of example, our Court and the Fourth Circuit Court of Appeals have held that "[g]enerally, an initial traffic stop concludes and the encounter becomes consensual [ ] after an officer returns the detainee's driver's license and registration." State v. Jackson , 199 N.C.App. 236, 243, 681 S.E.2d 492, 497 (2009). See also United States v. Whitney , 391 Fed.Appx. 277, 280-81 (4th Cir. 2010) (unpublished).