DILLON, Judge, dissenting.
Because I agree with the State that Judge Adams's findings support a conclusion that Trooper Lamm obtained Defendant's consent to search the rental vehicle after the traffic stop had concluded, and that Defendant was otherwise free to leave, I respectfully dissent.
Even assuming, arguendo , that Trooper Lamm's exchange with Defendant following the conclusion of the traffic stop was non-consensual, Trooper Lamm had reasonable suspicion of separate, independent criminal activity to support an extension of the traffic stop beyond the time necessary to complete the mission of citing Defendant for the traffic violation.
I. The Seizure Had Ended Because the Traffic Stop Had Concluded and Defendant was Free to Leave.
The majority contends that the stop was unconstitutionally extended when Defendant was sitting in the patrol car and his companion, Ms. Peart, had returned to the rental car. The majority concluded that a person in Defendant's position would not feel free to leave at the point of the encounter when Trooper Lamm told Defendant to "sit tight" in the patrol car while Trooper Lamm returned to the rental vehicle *532 to seek to Ms. Peart's consent to search the rental vehicle. However, I disagree with this analysis: As explained below, the findings of Judge Adams show that Defendant gave his consent to Trooper Lamm to search the rental vehicle (or ask Ms. Peart for consent) at a point during the encounter when Defendant was no longer seized, well before Trooper Lamm told Defendant to "sit tight." And once Defendant gave his consent to the search, it was certainly reasonable for Trooper Lamm to direct Defendant to "sit tight" for officer safety while he returned to the rental vehicle, which Ms. Peart was seated inside.
I agree with the majority that while Trooper Lamm held Defendant's paperwork and issued the warning ticket for speeding as Defendant was sitting in the patrol car, Defendant was still seized.
However, based on controlling jurisprudence, the seizure ended when, as the trial court found, Trooper Lamm gave the warning ticket, along with Defendant's paperwork, to Defendant and told Defendant that the traffic stop was completed. Indeed, our Court and the Fourth Circuit Court of Appeals have held on a number of occasions that "[g]enerally, an initial traffic stop concludes and the encounter becomes consensual ... after an officer returns the detainee's driver's license and registration." State v. Jackson , 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009).[1]
*251 United States v. Sullivan , 138 F.3d 126, 133-34 (4th Cir. 1998)[2] . Further, as Judge Adams found, Trooper Lamm did not seek Defendant's consent to search the rental car until after returning Defendant's paperwork back to him and informing Defendant that the traffic stop had concluded. There is no finding to suggest any restraint or compulsion by Trooper Lamm when he obtained Defendant's consent to search the rental vehicle. That is, Trooper Lamm did not simply launch into an interrogation after returning to Defendant his license and other paperwork. Rather, as Judge Adams found, Trooper Lamm took the extra step of first asking Defendant for his consent to question him further. See Kincaid , 147 N.C. App. at 102, 555 S.E.2d at 300 (holding in a similar situation when the *533 officer "asked if he could question defendant ... [,] [he] did not deprive defendant of freedom of action in any significant way. After [the officer] handed back defendant's license and registration, defendant was free to leave and free to refuse to answer questions"). Judge Adams also found that Trooper Lamm "was at all times casual and conversational in his words and manner."[3] See Sullivan , 138 F.3d at 133 (finding relevant that "there is no indication that [the officer] employed any physical force or engaged in any outward displays of authority"). Also significant is that the questioning occurred on a public highway during the daytime.
It is true that there is no indication (or finding) that Trooper Lamm ever expressly told Defendant that he "was free to leave." The United States Supreme Court, however, has held that an officer is not required to inform a detainee that he is free to leave in order to transform a traffic stop into a consensual encounter. See Ohio v. Robinette , 519 U.S. 33, 39-40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (concluding that it would be "unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary."). The Fourth Circuit has reached this same conclusion. See Sullivan , 138 F.3d at 133 ("While [the officer] never told [the defendant] that he was free to go, that fact alone is not dispositive.") And our Court has also reached this same conclusion. See Kincaid, 147 N.C. App. at 97, 555 S.E.2d at 297 (affirming the trial court's conclusion that the defendant was free to leave "although the officer never told defendant that he was free to leave").
Judge Adams further found that after Defendant gave Trooper Lamm consent to search the rental vehicle (subject to Ms. Peart's consent), Trooper Lamm directed Defendant to "sit tight" in the unlocked patrol car while he returned to the rental vehicle to ask Ms. Peart for her consent to the search. I conclude that it was constitutionally permissible for Trooper Lamm, for purposes of officer safety, to direct Defendant to remain in the patrol car while he carried out the search to which Defendant had voluntarily consented.[4] Certainly, where an individual has consented to a search, an officer can direct that individual away *534 from the place being searched and away from other companions for purposes of officer safety.
In conclusion, since Defendant gave his consent to search the car after the traffic stop had concluded and the encounter between *252 Defendant and Trooper Lamm became consensual, I would affirm Judge Adams' order.
II. Trooper Lamm Otherwise Had Reasonable Suspicion to Extend the Stop.
Assuming, arguendo , that the traffic stop did not become consensual after Trooper Lamm returned all of the paperwork to Defendant, informed Defendant that the traffic stop had concluded, and asked Defendant for his consent to question him further, I believe that Judge Adams's findings support her conclusion that Trooper Lamm had reasonable suspicion that Defendant was transporting illegal drugs. I so conclude based on the holding of our Supreme Court in State v. Bullock , 370 N.C. 256, 805 S.E.2d 671 (2017), and for the reasons stated in my dissent in the first opinion filed in the present case, State v. Reed , --- N.C. App. ----, ----, 791 S.E.2d 486, 493-96 (2016).

See also State v. Henry , 237 N.C. App. 311, 324, 765 S.E.2d 94, 104 (2014) (recognizing that "a traffic stop is not terminated until after the officer returns the driver's license or other documents to the driver"); State v. Cottrell , 234 N.C. App. 736, 742-43, 760 S.E.2d 274, 279 (2014) (restating the general principle that the return of motorist documentation typically renders any subsequent exchanges between motorist and law enforcement consensual). In State v. Kincaid , we recognized that "subject to a totality of the circumstances test, that once an officer returns the license and registration, the stop is over and the person is free to leave." 147 N.C. App. 94, 99, 555 S.E.2d 294, 298 (2001).

See also United States v. Whitney , 391 Fed.Appx. 277, 280-81 (4th Cir. 2010) ; United States v. Meikle , 407 F.3d 670, 673-74 (4th Cir. 2005).

Defendant challenges the finding regarding the casualness of the conversation; however, he does not challenge this finding with regards to any portion of the encounter occurring after Trooper Lamm informed Defendant that the traffic stop was completed.

Defendant does not make any argument concerning whether Ms. Peart would not have felt free to leave when she gave her consent to search the vehicle or any argument about the impact the validity of Ms. Peart's consent should have on our analysis in this prosecution of Defendant. Therefore, any issue concerning Ms. Peart's consent is not before us.