IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-477-2

 Filed: 20 August 2019

Mecklenburg County, Nos. 15 CRS 212911-13

STATE OF NORTH CAROLINA

 v.

JERRY GIOVANI THOMPSON

 Appeal by defendant from judgment entered 3 January 2017 by Judge William

R. Bell in Mecklenburg County Superior Court. Originally heard in the Court of

Appeals 5 October 2017, with opinion issued 2 January 2018. On 1 February 2019,

the Supreme Court vacated and remanded to this Court for reconsideration in light

of State v. Wilson, 371 N.C. 920, 821 S.E.2d 811 (2018).

 Attorney General Joshua H. Stein, by Assistant Attorney General Robert T.
 Broughton, for the State.

 Robinson, Bradshaw & Hinson, P.A., by Erik R. Zimmerman, for defendant-
 appellant.

 ZACHARY, Judge.

 Defendant Jerry Giovani Thompson appealed from the trial court’s judgment

sentencing him for convictions of felony possession of marijuana, possession with

intent to sell or deliver marijuana, possession of marijuana paraphernalia, and

possession of a firearm by a felon. Defendant argued on appeal that the trial court
 STATE V. THOMPSON

 Opinion of the Court

erred in denying his motion to suppress.1 By published opinion issued on 2 January

2018, a majority of this Court concluded over a dissent “that the factual findings in

the order denying defendant’s suppression motion did not resolve a pivotal disputed

issue of fact, requiring us to vacate the judgment and remand for further findings.”

State v. Thompson, ___ N.C. App. ___, ___, 809 S.E.2d 340, 343 (2018) (“Thompson

I”). The Supreme Court subsequently vacated Thompson I and remanded the matter

to this Court for reconsideration in light of the Supreme Court’s decision in State v.

Wilson, 371 N.C. 920, 821 S.E.2d 811 (2018). Upon reconsideration, we conclude that

the trial court’s order denying Defendant’s motion to suppress cannot be upheld on

the grounds enumerated in State v. Wilson. Accordingly, we vacate the judgment and

remand for entry of additional findings consistent with our decision in Thompson I.

 I. Background

 On 10 April 2015, a team of roughly eight to twelve law enforcement officers

with the Charlotte-Mecklenburg Police Department traveled to an apartment on

Basin Street in Charlotte in order to execute a search warrant. The target of the

search warrant was a female.

 Defendant was cleaning his vehicle in the street adjacent to the apartment

when the officers arrived to execute the search warrant. Sergeant Michael Sullivan

approached Defendant in order to confirm that he was not the female named in the

 1 Defendant also argued that the judgment sentencing him for felony possession of marijuana
should be vacated on the grounds that he did not plead guilty to that offense.

 -2-
 STATE V. THOMPSON

 Opinion of the Court

search warrant and to ensure that he would not interfere with the search. Defendant

told Sergeant Sullivan that he did not live in the apartment, but his girlfriend did.

 Sergeant Sullivan asked Defendant for his identification, “handed him” and

his driver’s license off to Officer Justin Price, and then proceeded inside the

apartment in order to supervise the search. Officer Price testified that Defendant was

already in custody at that point. Officer Price and Officer Michael Blackwell remained

outside with Defendant while the other officers executed the search warrant. Roughly

ten minutes later, Officer Mark Hefner exited the apartment and asked Defendant

for permission to search his vehicle. Defendant consented to the search, and officers

found marijuana, paraphernalia, and a firearm in the trunk.

 Defendant was indicted for possession of marijuana paraphernalia, possession

with intent to sell or deliver marijuana, felony possession of marijuana, maintaining

a vehicle for the purpose of keeping a controlled substance, and possession of a

firearm by a felon.

 On 4 October 2016, Defendant filed a motion to suppress the evidence seized

from the search of his vehicle. Defendant argued that “[t]he initial police

encounter . . . was not a voluntary contact, but rather an illegal seizure and detention

of [Defendant] which was unsupported by reasonable suspicion,” and that the trial

court was therefore required to “suppress all evidence gathered as a result of the

illegal seizure of his person and the illegal search of his vehicle.” Following a hearing,

 -3-
 STATE V. THOMPSON

 Opinion of the Court

however, the trial court found that Defendant “was neither seized nor in custody” at

the time he consented to the search of his vehicle.

 Because Defendant was never “seized” within the meaning of the Fourth

Amendment, the trial court concluded that no Fourth Amendment violation had

occurred and, accordingly, denied Defendant’s motion to suppress. Defendant

subsequently pleaded guilty to possession of drug paraphernalia, possession with

intent to sell or deliver marijuana, and possession of a firearm by a felon, preserving

his right to appeal the trial court’s denial of his motion to suppress. The trial court

imposed a suspended sentence and placed Defendant on 24 months’ supervised

probation. A written order denying Defendant’s motion to suppress was entered on 5

January 2017. Defendant timely appealed.

 This Court heard Defendant’s appeal on 5 October 2017. Defendant argued on

appeal that the officers “seized” him for purposes of the Fourth Amendment “when

they took and retained his driver’s license,” and that such seizure, in the absence of

“any reasonable suspicion that he was involved in criminal activity,” violated

Defendant’s Fourth Amendment rights. Citing State v. Cottrell, 234 N.C. App. 736,

760 S.E.2d 274 (2014), Defendant maintained that the trial court was required to

suppress the evidence recovered from the search of his vehicle because it was the

product of “this unconstitutional seizure.”

 -4-
 STATE V. THOMPSON

 Opinion of the Court

 Over a dissent, this Court concluded that the trial court’s findings of fact were

insufficient to determine whether Defendant had been “seized” for purposes of the

Fourth Amendment:

 It is long-established that “a person has been ‘seized’
 within the meaning of the Fourth Amendment only if, in
 view of all of the circumstances surrounding the incident,
 a reasonable person would have believed that he was not
 free to leave.” United States v. Mendenhall, 446 U.S. 544,
 554, 64 L. Ed. 2d 497, 509 (1980). As a result, “an initially
 consensual encounter between a police officer and a citizen
 can be transformed into a seizure or detention within the
 meaning of the Fourth Amendment, if, in view of all of the
 circumstances surrounding the incident, a reasonable
 person would have believed that he was not free to leave.”
 INS v. Delgado, 466 U.S. 210, 215, 80 L. Ed. 2d 247, 255
 (1984).

 ....

 In determining whether a defendant was seized, “relevant
 circumstances include, but are not limited to, the number
 of officers present, whether the officer displayed a weapon,
 the officer’s words and tone of voice, any physical contact
 between the officer and the individual, whether the officer
 retained the individual’s identification, or property, the
 location of the encounter, and whether the officer blocked
 the individual’s path.” State v. Icard, 363 N.C. 303, 309,
 677 S.E.2d 822, 827 (2009).

 ....

 In arguing that he was seized, defendant places
 great emphasis upon his contention that the law
 enforcement officers retained his driver’s license during
 the encounter. Defendant cites several cases, including
 State v. Jackson, 199 N.C. App. 236, 243, 681 S.E.2d 492,
 497 (2009), in which this Court stated, in analyzing

 -5-
 STATE V. THOMPSON

 Opinion of the Court

whether the defendant had been seized, that “a reasonable
person under the circumstances would certainly not believe
he was free to leave without his driver’s license and
registration.” We find this argument persuasive. Indeed,
we have not found any cases holding that a defendant
whose identification or driver’s license was held by the
police without reasonable suspicion of criminal activity was
nonetheless “free to leave.”

 ....

 In its appellate brief, the State does not dispute the
crucial significance of whether the officers kept defendant’s
license. . . . The State instead argues that the trial court’s
findings of fact fail to establish whether the officers
retained defendant’s license or returned it to him after
examination. We agree with this contention.

 Witnesses at the hearing on defendant’s suppression
motion gave conflicting testimony with regard to the
circumstances under which law enforcement officers took
possession of defendant’s driver’s license and the time
frame in which the relevant events occurred. . . .

[D]efendant testified that the officers retained his license,
but the officers did not testify about this issue. Assuming
that the law enforcement officers kept defendant’s
identification, the testimony is conflicting as to whether
defendant’s car was searched before, immediately after, ten
minutes after, or a half-hour after defendant gave his
license to [Sergeant] Sullivan.

 ....

In this case, the trial court’s findings of fact do not resolve
the question of whether the law enforcement officers
returned defendant’s license after examining it, or instead
retained it, or the issue of the sequence of events and the
time frame in which they occurred. Given that the officers
conceded that their interaction with defendant was not

 -6-
 STATE V. THOMPSON

 Opinion of the Court

 based upon suspicion of criminal activity, a finding that
 officers kept defendant’s identification would likely
 support the legal conclusion that he had been seized.

Thompson I, ___ N.C. App. at ___, 809 S.E.2d at 345-49 (internal citations, quotation

marks, and brackets omitted). Accordingly, “[b]ecause the court’s findings of fact

fail[ed] to resolve material issues, we vacate[d] the judgment entered against

defendant, and remand[ed] for the trial court to enter findings of fact that resolve all

material factual disputes.”2 Id. at ___, 809 S.E.2d at 349. Judge Berger dissented on

the grounds that “Defendant was never seized by Charlotte-Mecklenburg Police

Department . . . officers within the meaning of the Fourth Amendment.” Id. at ___,

809 S.E.2d at 350 (Berger, J., dissenting).

 The State appealed of right to our Supreme Court pursuant to N.C. Gen. Stat.

§ 7A-30(2). On 1 February 2019, the Supreme Court vacated Thompson I and

remanded the case to this Court for review in light of its decision in State v. Wilson,

371 N.C. 920, 821 S.E.2d 811 (2018).

 Wilson requires this Court to determine, assuming, arguendo, that Defendant

was in fact “seized” for purposes of the Fourth Amendment, whether such seizure was

nevertheless justified under the rule set forth by the United States Supreme Court

 2 We likewise agreed with Defendant “that the judgment entered against [him] and the written
transcript of plea, both of which were signed by the trial judge, are inconsistent,” and therefore
remanded “for resolution of this discrepancy.” Id. at ___, 809 S.E.2d at 343. The dissent, and thus the
resulting appeal, was not predicated upon this ground, nor does the Supreme Court’s decision in
Wilson affect that conclusion. Accordingly, we reiterate that portion of our holding from Thompson I,
but decline to address it further in this opinion.

 -7-
 STATE V. THOMPSON

 Opinion of the Court

in Michigan v. Summers, 452 U.S. 692, 69 L. Ed. 2d 340 (1981). We conclude that it

was not.

 II. Michigan v. Summers and State v. Wilson

 In Michigan v. Summers, the United States Supreme Court held that “for

Fourth Amendment purposes, . . . a warrant to search for contraband founded on

probable cause implicitly carries with it the limited authority to detain the occupants

of the premises while a proper search is conducted.” 452 U.S. at 705, 69 L. Ed. 2d at

351 (footnote omitted). Our Supreme Court in Wilson identified three prongs to the

rule: “a warrant to search for contraband founded on probable cause implicitly carries

with it the limited authority to detain (1) the occupants, (2) who are within the

immediate vicinity of the premises to be searched, and (3) who are present during the

execution of a search warrant.” Wilson, 371 N.C. at 924, 821 S.E.2d at 815 (citations

and quotation marks omitted). “These three parts roughly correspond to the ‘who,’

‘where,’ and ‘when’ of a lawful suspicionless seizure incident to the execution of a

search warrant.” Id.

 Our Supreme Court in Wilson applied the Summers rule and rejected the

defendant’s challenge to the trial court’s denial of his motion to suppress. In that case,

the defendant had arrived on the scene while the Winston-Salem Police Department

was in the process of actively securing a home in order to execute a search warrant.

Id. at 922, 821 S.E.2d at 813. The defendant penetrated the perimeter securing the

 -8-
 STATE V. THOMPSON

 Opinion of the Court

scene, walked past an officer, and announced that he was going to retrieve his moped.

Id. After disobeying the officer’s command to stop, the defendant proceeded down the

driveway toward the home, at which point officers detained and frisked him. Id.

Officers recovered a firearm, and the defendant was charged with possession of a

firearm by a felon. Id. at 922, 821 S.E.2d at 814.

 In determining whether the defendant had been lawfully seized under the

Summers rule, our Supreme Court noted that the application of the second and third

prongs was “straightforward,” and thus focused its inquiry on the first prong, i.e.,

whether the defendant’s brief detention was justified on the ground that he was an

“occupant” of the premises during the execution of a search warrant. Id. at 924-25,

821 S.E.2d at 815.

 The United States Supreme Court adopted the Summers rule based in part

upon the rationale that “[i]f the evidence that a citizen’s residence is harboring

contraband is sufficient to persuade a judicial officer that an invasion of the citizen’s

privacy is justified, it is constitutionally reasonable to require that citizen to remain

while officers of the law execute a valid warrant to search [her] home.” Summers, 452

U.S. at 704-05, 69 L. Ed. 2d at 351. Our Supreme Court noted, however, that beyond

enumerating the governmental interests that combine to justify a Summers

detention, the United States Supreme Court had yet to “directly resolve[ ] the issue

 -9-
 STATE V. THOMPSON

 Opinion of the Court

of who qualifies as an ‘occupant’ for the purposes of the . . . rule.” Wilson, 371 N.C. at

925, 821 S.E.2d at 815.

 In attempting to answer this question, the Wilson Court examined the various

rationales underlying the Summers rule. The Court ultimately concluded that a

person is an “occupant” for purposes of the rule “if he poses a real threat to the safe

and efficient execution of a search warrant.” Id. (quotation marks omitted); see also

Bailey v. United States, 568 U.S. 186, 195, 185 L. Ed. 2d 19, 29-30 (2013) (“When law

enforcement officers execute a search warrant, safety considerations require that

they secure the premises, which may include detaining current occupants. By taking

unquestioned command of the situation, the officers can search without fear that

occupants, who are on the premises and able to observe the course of the search, will

become disruptive, dangerous, or otherwise frustrate the search.” (citation and

quotation marks omitted)). Thus, under this formulation of the rule, our Supreme

Court noted that although a defendant may not be “an occupant of the premises being

searched in the ordinary sense of the word,” Wilson, 371 N.C. at 925, 821 S.E.2d at

815, the defendant’s “own actions” may nevertheless “cause[ ] him to satisfy the first

part, the ‘who,’ ” of a lawful Summers detention. Id. at 926, 821 S.E.2d at 816.

 Applying this definition, although the defendant was not inside the premises

when the officers arrived to execute the search warrant, our Supreme Court

concluded that the defendant’s own actions had nevertheless rendered him an

 - 10 -
 STATE V. THOMPSON

 Opinion of the Court

“occupant,” thereby subjecting him to a suspicionless seizure incident to the lawful

execution of the search warrant. The Supreme Court reasoned:

 We believe defendant posed a real threat to the safe and
 efficient execution of the search warrant in this case. He
 approached the house being swept, announced his intent to
 retrieve his moped from the premises, and appeared to be
 armed. It was obvious that defendant posed a threat to the
 safe completion of the search. . . . [I]t was apparent to [the
 officer] that defendant was attempting to enter the area
 being searched—or, stated another way, defendant would
 have occupied the area being searched if he had not been
 restrained.

Id. at 925, 821 S.E.2d at 815. Because the defendant’s initial detention, lawful under

the Summers rule, did not taint the subsequent search, no Fourth Amendment

violation occurred, and the Supreme Court therefore affirmed the trial court’s denial

of his motion to suppress.

 III. Application

 In the instant case, there is no question but that the third prong of the

Summers rule—the “when”—is satisfied, in that the officers detained Defendant

during their lawful execution of a warrant to search his girlfriend’s apartment.

Moreover, given the apartment’s proximity to the street on which Defendant’s vehicle

was parked, it is also arguable that the circumstances here satisfied the second

prong—the “where”—of the Summers rule. See id. at 924, 821 S.E.2d at 815 (“It is

also evident that defendant was seized within the immediate vicinity of the premises

being searched.”). We conclude, however, that Defendant was not an “occupant” of

 - 11 -
 STATE V. THOMPSON

 Opinion of the Court

the searched premises, as that term is defined in Wilson, so as to satisfy the first

prong—the “who”—of a lawful Summers detention.

 Defendant was cleaning his vehicle in the street when officers arrived to

execute the search warrant. The officers approached Defendant to question him.

Defendant remained inside his vehicle and told the officers that he did not live in the

apartment, but that his girlfriend did. At no point did Defendant attempt to approach

the apartment. Nor did he exhibit nervousness or agitation, disobey or protest the

officers’ directives, appear to be armed, or undertake to interfere with the search.3 Cf.

id. at 925-26, 821 S.E.2d at 816 (“Indeed, if such precautionary measures [such as

erecting barricades or posting someone at the door] did not carry with them some

categorical authority for police to detain individuals who attempt to circumvent them,

it is not clear how officers could practically search without fear that occupants, who

are on the premises and able to observe the course of the search, would become

disruptive, dangerous, or otherwise frustrate the search.” (emphasis added)

(quotation marks omitted)). Quite simply, there were no circumstances to indicate

 3 The dissent appears to argue that Defendant’s detention was justified, in part, upon his
girlfriend “identif[ying] him as the supplier of the drugs that were the target of the search.” Dissent at
7. This is obviously irrelevant, as Defendant had already purportedly been “seized” by the time the
officers learned this information.

 - 12 -
 STATE V. THOMPSON

 Opinion of the Court

that Defendant would pose “a real threat to the safe and efficient execution” of the

officers’ search.4 Id. at 925, 821 S.E.2d at 815.

 To hold that Defendant’s presence in his vehicle under these circumstances

was sufficient to render him an “occupant” of the apartment for purposes of the

Summers rule would afford the State the wide discretion to detain any unlucky

bystander, simply because he or she happens to be familiar with a resident of the

premises being searched.5 Nevertheless, the dissent maintains that “[t]he Court in

Wilson addressed [this] main concern when it limited law enforcement’s ability to

detain only those who are within ‘the immediate vicinity of the premises to be

searched.’ ” Dissent at 5. This contention is misplaced. Nor is the same eliminated by

virtue of Defendant’s “connection to the apartment.” Id. at 6.

 The dissent’s suggestion that a defendant’s presence in the immediate vicinity

of a searched premises should operate categorically to satisfy the first prong of the

Summers rule would render entirely superfluous our Supreme Court’s scrupulous

effort in Wilson to define “occupant” as someone who “poses a real threat to the safe

and efficient execution of a search warrant.” Wilson, 371 N.C. at 925, 821 S.E.2d at

815. To be sure, in arriving at its definition of “occupant” for purposes of the first

 4 The dissent would also conclude that Defendant posed a threat “to the efficacy of the search,
as CMPD resources were diverted away from the execution of the search to prevent any potential
interference by Defendant[.]” Dissent at 6. This circular argument is a logical fallacy.
 5 Such a precedent would be particularly concerning given the prevalence of neighborhoods in

which family members live within close proximity to one another.

 - 13 -
 STATE V. THOMPSON

 Opinion of the Court

prong of Summers, the Wilson Court used as a “guidepost” that same reasoning which

underlies the lawful spatial dimension of a Summers detention under the second

prong. Id. (“The reasoning in Bailey comports with the justification in Summers

because someone who is sufficiently close to the premises being searched could pose

just as real a threat to officer safety and to the efficacy of the search as someone who

is within the premises.”). Such guidance, however, does not amount to a holding that

an individual’s presence within the immediate vicinity of a search, by its very nature,

poses a threat to the search’s safe and efficient execution.

 Had the Supreme Court intended such a rule, it would have had no reason to

examine the particular circumstances in order to analyze whether the defendant in

that case had, in fact, posed “a real threat to the safe and efficient execution of [the]

search warrant.” Id. (emphasis added) (“We believe defendant posed a real threat to

the safe and efficient execution of the search warrant in this case. He approached the

house being swept, announced his intent to retrieve his moped from the premises,

and appeared to be armed. . . . Defendant argues that he was not an occupant of the

premises being searched in the ordinary sense of the word. Given defendant’s actions

here, however, it was apparent to [the officer] that defendant was attempting to enter

the area being searched—or, stated another way, defendant would have occupied the

area being searched if he had not been restrained.”). Moreover, although both factors

 - 14 -
 STATE V. THOMPSON

 Opinion of the Court

were present, our Supreme Court’s holding in Wilson was not based, even in part,

upon either the defendant’s “connection” to the premises or his proximity thereto. Id.

 Thus, under the dissent’s logic—where the second prong of Summers is the

only meaningful requirement—Summers would still boundlessly subject to detention

any grass-mowing uncle, tree-trimming cousin, or next-door godson checking his

mail, merely based upon his “connection” to the premises and hapless presence in the

immediate vicinity. We do not interpret Summers or Wilson as creating such a

sweeping exception to the Fourth Amendment’s proscription against unreasonable

seizures. Nor are we able to perceive any line which might practically be drawn to

curtail this tremendous discretion, beyond that which our Supreme Court has already

set forth. See id. (“[A] person is an occupant for the purposes of the Summers rule if

he poses a real threat to the safe and efficient execution of [the] search warrant.”

(emphasis added) (quotation marks omitted)).

 Accordingly, assuming that there was one, we conclude that Defendant’s

suspicionless seizure in the instant case cannot be justified on the ground that he was

an “occupant” of the premises during the lawful execution of a search warrant.

Therefore, we vacate the judgment entered upon the denial of Defendant’s motion to

suppress, and remand the matter to the trial court for entry of an order containing

findings of fact necessary to resolve all material factual disputes, pursuant to our

holding in Thompson I. See Thompson I, ___ N.C. App. at ___, 809 S.E.2d at 349 (“In

 - 15 -
 STATE V. THOMPSON

 Opinion of the Court

this case, the trial court’s findings of fact do not resolve the question of whether the

law enforcement officers returned defendant’s license after examining it, or instead

retained it, or the issue of the sequence of events and the time frame in which they

occurred.”). In addition, we reiterate our decision in Thompson I to remand for

correction of the discrepancy between the transcript of Defendant’s plea and the

judgment entered against him. Id. at ___, 809 S.E.2d at 350.

 VACATED AND REMANDED.

 Chief Judge McGEE concurs.

 Judge BERGER dissents by separate opinion.

 - 16 -
 No. COA17-477-2 – State v. Thompson

 BERGER, Judge, dissenting.

 This case is before us again on remand from the Supreme Court of North

Carolina with instructions to reconsider this matter in light of State v. Wilson, 371

N.C. 920, 821 S.E.2d 811 (2018). State v. Thompson, ___ N.C. ___, 822 S.E.2d 616

(2019). I continue to believe that no seizure occurred. See State v. Thompson, ___

N.C. App. ___, 809 S.E.2d 340 (2018) (Thompson I) (Berger, J., dissenting). Following

the Supreme Court’s instructions and assuming, arguendo, that a seizure did occur,

I respectfully dissent.

 “The standard of review in evaluating the denial of a motion to suppress is

whether competent evidence supports the trial court’s findings of fact and whether

the findings of fact support the conclusions of law.” State v. Biber, 365 N.C. 162, 167-

68, 712 S.E.2d 874, 878 (2011) (citation omitted). Our review of a trial court’s denial

of a motion to suppress is “strictly limited to determining whether the trial judge’s

underlying findings of fact are supported by competent evidence, in which event they

are conclusively binding on appeal, and whether those factual findings in turn

support the judge’s ultimate conclusions of law.” State v. Cooke, 306 N.C. 132, 134,

291 S.E.2d 618, 619 (1982) (citations omitted). “The trial court’s conclusions of

law . . . are fully reviewable on appeal.” State v. Hughes, 353 N.C. 200, 208, 539

S.E.2d 625, 631 (2000).

 “The question for review is whether the ruling of the trial court was correct

and not whether the reason given therefore is sound or tenable.” State v. Austin, 320
 STATE V. THOMPSON

 BERGER, J., dissenting

N.C. 276, 290, 357 S.E.2d 641, 650 (1987) (citation omitted). “[A] correct decision of

a lower court will not be disturbed because a wrong or insufficient or superfluous

reason is assigned.” State v. Blackwell, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957)

(citation omitted).

 The burden on appeal rests upon Defendant to show the
 trial court’s ruling is incorrect. . . . the State’s failure to
 raise the . . . issue at the hearing does not compel nor
 permit this Court to summarily exclude the possibility that
 the trial court’s ruling was correct under this or some other
 doctrine or rationale. . . . Our precedents clearly allow the
 party seeking to uphold the trial court’s presumed-to-be-
 correct and “ultimate ruling” to, in fact, choose and run any
 horse to race on appeal to sustain the legally correct
 conclusion of the order appealed from.

State v. Hester, ___ N.C. App. ___, ___, 803 S.E.2d 8, 16 (2017) (purgandum).

 On remand, we have been instructed to review this case in light of Wilson

which states:

 a warrant to search for contraband founded on probable
 cause implicitly carries with it the limited authority to
 detain (1) the occupants, (2) who are within the immediate
 vicinity of the premises to be searched, and (3) who are
 present during the execution of a search warrant . . . .
 These three parts roughly correspond to the “who,”
 “where,” and “when” of a lawful suspicionless seizure
 incident to the execution of a search warrant.

State v. Wilson, 371 N.C. 920, 923, 821 S.E.2d 811, 815 (2018) (purgandum). I

disagree with the majority’s conclusion that, assuming Defendant was in fact seized,

such seizure cannot be justified upon the ground that he was an “occupant of the

premises” during the execution of a search warrant.

 2
 STATE V. THOMPSON

 BERGER, J., dissenting

 Our Supreme Court has defined the term occupant to be one who “poses a real

threat to the safe and efficient execution of a search warrant.” Id. at 925, 821 S.E.2d

at 815 (citation omitted). The threat does not have to be immediately present during

the execution of the search warrant. As the Court in Wilson noted, “someone who is

sufficiently close to the premises being searched could pose just as real a threat to

officer safety and to the efficacy of the search as someone who is within the premises.”

Id. Sufficient proximity to the premises being searched allows for the mere possibility

of interference with the search, which could result in potential harm to officers and a

less efficient execution of the search warrant.

 This potential for interference and harm has led to “the Supreme Court’s

recognition that officers may constitutionally mitigate the risk of someone entering

the premises during a search ‘by taking routine precautions, for instance by erecting

barricades or posting someone on the perimeter or at the door.’ ” Id. (quoting Bailey

v. United States, 568 U.S. 186, 195 (2013)).

 Although no special danger to the police is suggested by the
 evidence in this record, the execution of a warrant to search
 for narcotics is the kind of transaction that may give rise to
 sudden violence or frantic efforts to conceal or destroy
 evidence . . . [and] the risk of harm to both the police and
 the occupants is minimized if the officers routinely exercise
 unquestioned command of the situation.

Michigan v. Summers, 452 U.S. 692, 702-03 (1980).

 Officers must have the authority to mitigate risks during the execution of a

search warrant. Without such authority, “it is not clear how officers could practically

 3
 STATE V. THOMPSON

 BERGER, J., dissenting

‘search without fear that occupants, who are on the premises and able to observe the

course of the search, [would] become disruptive, dangerous, or otherwise frustrate the

search.’ ” Wilson, 371 N.C. at 926, 821 S.E.2d at 816 (alteration in original) (quoting

Bailey, 568 U.S. at 195).

 The majority seems to be concerned that if mere presence in the “immediate

vicinity” of a search is sufficient for someone to be an “occupant,” and subject to

lowered Fourth Amendment protections, this would justify detaining “any unlucky

bystander.” Perhaps confident that Defendant did not pose a threat to law

enforcement, the majority declines to acknowledge that an individual within

“immediate vicinity” of the area to be searched is a real threat to safe and efficient

execution of a search warrant. In addition, the majority ignores the fact that the

target of the search identified Defendant as her drug supplier.

 The majority opinion jeopardizes the safety of law enforcement officers across

this State. While the majority is content to focus on the coolness and calmness of

Defendant, law enforcement officers should not be required to gamble with their lives

because an individual within the immediate vicinity simply looked calm. The

majority elevates hyper-technical Monday-morning quarterbacking over common

sense. We should be reminded that “courts should credit the practical experience of

officers who observe on a daily basis what transpires on the street, so as to avoid

 4
 STATE V. THOMPSON

 BERGER, J., dissenting

indulging in unrealistic second-guessing of law enforcement judgment calls.” State

v. Mangum, ___ N.C. App. ___, ___, 795 S.E.2d 106, 118 (2016) (purgandum).

 The Court in Wilson addressed the majority’s main concern when it limited law

enforcement’s ability to detain only those who are within “the immediate vicinity of

the premises to be searched.” Wilson, 371 N.C. at 924, 821 S.E.2d at 815. The Wilson

Court adopted the limitations from Bailey to circumscribe law enforcement’s

authority to detain occupants, and the Court listed factors to be considered “to

determine whether an occupant was detained within the immediate vicinity of the

premises to be searched, including the lawful limit of the premises, whether the

occupant was within the line of sight of his dwelling, the ease of reentry from the

occupant’s location, and other relevant factors.” Id. (quoting Bailey, 568 U.S. at 201).

 Officer safety has justified the broad discretion for law enforcement to use

detention as a measure of mitigation and protection during the execution of a search

warrant. The United States Supreme Court found that “[a]n officer’s authority to

detain incident to a search is categorical; it does not depend on the ‘quantum of proof

justifying detention or the extent of the intrusion to be imposed by the seizure.’ ”

Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Summers, 452 U.S. at 705, n. 19).

“[E]ven when officers have no basis for suspecting a particular individual, they may

generally ask questions of that individual; ask to examine the individual’s

 5
 STATE V. THOMPSON

 BERGER, J., dissenting

identification; and request consent to search his or her [possessions].” Id. at 101 (first

alteration in original) (citation omitted).

 Here, in their lawful search for drugs, a situation which can often give rise to

“sudden violence,” CMPD officers “exercise[d] unquestioned command of the

situation.” Summers, 452 U.S. at 703. Defendant was engaged by officers to

determine who he was, to prevent any potential interference by Defendant, and to

keep officers safe. After discovering Defendant’s connection to the apartment—that

he was visiting his girlfriend who lived there and who was the subject of the search

warrant—CMPD officers were not willing to risk any potential interference or harm

by Defendant.

 His proximity and connection to the apartment being searched “pose[d] just as

real a threat to officer safety and to the efficacy of the search as someone who [was]

within the premises.” Wilson, 371 N.C. at 925, 821 S.E.2d at 815. The nature of the

search and Defendant’s proximity to the apartment gave rise for officers to believe

Defendant could pose a threat to the safety of the search. Upon learning that

Defendant was the subject’s boyfriend and supplier, Defendant required officer

attention because he was a threat, not only to the efficacy of the search, as CMPD

resources were diverted away from the execution of the search to prevent any

potential interference by Defendant, but to officer safety. Therefore, Defendant was

 6
 STATE V. THOMPSON

 BERGER, J., dissenting

an occupant of the premises to be searched pursuant to Wilson, and CMPD officers

detention of Defendant was appropriate in their effort to mitigate risk.

 Applying the Bailey factors to determine whether Defendant was within the

immediate vicinity or not, there is no question that he was both “within the line of

sight” of the dwelling to be searched and could have easily gained entry from his

location. Bailey, 568 U.S. at 201.

 As noted before, Defendant stated his purpose for being there was to visit his

girlfriend, the target of the search. Officers could infer that he had been there before

and was familiar with the surrounding areas and layout of the apartment. Defendant

told police during his interrogation after arrest that he had slept at the residence the

previous night. He was well within the line of sight of the apartment being searched,

located “directly in front of the walkway that would lead to the residence.”

Additionally, while law enforcement was searching the apartment, his girlfriend saw

him outside and identified him as the supplier of the drugs that were the target of

the search. Defendant’s location at the end of the walkway leading to the apartment,

and the girlfriend’s ability to identify him from inside the residence show Defendant’s

being “within the line of site” and therefore within the immediate vicinity.

 Defendant “could [have] pose[d] just as real a threat to officer safety and to the

efficacy of the search as someone who [was] within the premises.” Wilson, 371 N.C.

at 925, 821 S.E.2d at 815. Pursuant to Wilson, Defendant was an occupant of the

 7
 STATE V. THOMPSON

 BERGER, J., dissenting

premises. Defendant was within the line of sight of the apartment being searched,

and was a threat to enter or attempt to enter the premises. Thus, Defendant was

located within the “immediate vicinity of the premises to be searched,” Bailey, 568

U.S. at 199, and subject to detention.

 The trial court did not err in denying Defendant’s motion to suppress. Even

assuming a seizure occurred, it was justified under Wilson because CMPD officers

had authority to detain Defendant as an occupant of the premises who was in the

immediate vicinity. I would affirm the trial court.

 8